MARY A. WOOLFOLK v. R. J. AND ANGELINA RICKETTS.

1. HOMESTEAD—ABANDONMENT.—When the family have in fact removed from one house, or "mansion house," and its adjoining land, and taken up their permanent abode and place of residence in another house, upon a different place, if there be nothing connected with such removal to indicate that it was temporary, and not permanent, the presumption exists, in support of the title of one who has purchased the former homestead, that it was abandoned as a homestead.

2. HOMESTEAD—ABANDONMENT.—When the object of a removal from a homestead is uncertain or equivocal, the cotemporaneous declarations of either husband or wife, if not inconsistent with, but calculated to explain, the real import and purpose of such removal, would be entitled to much weight, especially if publicly made, and when in conformity with subsequent conduct.

3. HOMESTEAD—ABANDONMENT.—But where there is an open and palpable abandonment of one home and a removal to another, and where every action of both the husband and wife, for a series of nine or ten years, indicated that their removal was intended to be permanent, the mere declarations of the wife, as against a purchaser who had in good faith purchased and paid for the former home, that she did not intend to abandon it, cannot, with any reason, be claimed as outweighing the evidence of abandonment thus furnished by the acts of herself and husband.

APPEAL from Cherokee. Tried below before the Hon. R. S. Walker.

This was an action of trespass to try title, instituted on the 13th day of March, A. D. 1871, in the District Court of Cherokee county, by R. J. Ricketts and his wife, Angelina Ricketts, plaintiffs, against Mary A. Woolfolk, defendant, for the

recovery of fourteen acres of land, east of and adjacent to the town of Rusk. Plaintiffs, in their original petition, alleged joint ownership generally of the land sued for; but in their amended petition, filed October 10, 1876, they set up and claim the same as their homestead, and the said Angelina Ricketts claimed the same as her separate property.

Defendant, Mary A. Woolfolk, claims that she is the just, legal, and equitable owner and possessor of the land in controversy, by a *bona-fide* purchase for a valuable consideration, fully paid, without notice of the claim of plaintiffs, and specially deraigns her title in her answer. Also, that plaintiffs had lost their homestead right by abandonment, and that the said Angelina Ricketts, by her acts and conduct, was estopped from setting up any claim to the land.

At the October Term, A. D. 1876, a jury was waived and the cause submitted to the court, and judgment rendered for plaintiffs, for the land in controversy, from which defendant appealed. The facts in evidence were not materially different from those reported, on its former appeal, in 41 Tex., 359.

*Bonner & Whitaker*, for appellant.—Our Supreme Court has fully recognized the doctrine of equitable estoppel *in pais*, as against married women. (Cravens *v.* Booth, 8 Tex., 243; O'Brien *v.* Hilburn, 9 Tex., 297; Crayton *v.* Munger, 9 Tex., 286; Baily *v.* Trammell, 27 Tex., 327; Ryan *v.* Maxey, 43 Tex., 196; Jones *v.* Taylor, 7 Tex., 249.)

It is the privilege, and as much the duty, of the wife to have the schedule of her separate property recorded, as it is the duty of any other persons to have their title deeds recorded; and certainly the policy of the law is the same in both cases. (Paschal's Dig., arts. 4995–5000.) To hold that the object of the statute was only to favor the rights of the wife, by changing the burden of proof from her to third persons, and thus virtually to protect her, when the law was intended to protect these third persons against her secret claims, is simply to mistake the effect for the cause, and to lose sight both of the

law and the reason thereof. Indeed, it may be well doubted, whether said article 5000 of Paschal's Digest, which makes the registry of the wife's schedule conclusive evidence of her title, is not unconstitutional, under the doctrine of Curry *v.* Hinman, 11 Ill., 428–9, and Cooley's Constitutional Limitations, 368–9, and authorities cited in notes. It would be a most monstrous doctrine, indeed, to permit her, in secret, to let her household goods go in payment of land, to have the deed taken in the name of the husband by onerous title and spread upon the public records, as in this case, and that years afterwards she could, as against a *bona-fide* purchaser for a valuable consideration, without any notice of her claim, recover it as her separate property. Even if the deed had been taken in her own name, by such onerous title, she could not, as against such purchaser, recover. (Cooke *v.* Bremond, 27 Tex., 457.) Under the law and the facts of this case, the land, then, must be treated as community property.

II. It is respectfully submitted, that Angelina Ricketts must fail to recover the land in controversy, both on the ground of abandonment of the same as a homestead, and equitable estoppel *in pais.*

The pretended homestead rights of Mrs. Ricketts to this land, stand on no higher equity than the claim to it as separate property. There is a broad distinction between the rights of a surviving wife to demand a homestead out of the estate of her deceased husband, and her privilege to a homestead during his lifetime. The law determines the one; the acts of the parties, the other. Upon the death of the husband, the law gives to the surviving wife a homestead out of the effects of the estate, in preference to general creditors; and this is the principle upon which the case of Reeves *v.* Petty, 44 Tex., 249, was decided; but while he is living, neither the Constitution nor the laws guarantee to her a homestead, but simply " the homestead," if, in fact, there is one. This term has received a judicial interpretation by our Supreme Court. The homestead is " the place of the house." "A man's home-

stead must be his place of residence,—the place where lives."
(Philleo *v.* Smalley, 23 Tex., 502 ; H. & G. N. R. R. Co. *v.*
Winter *et al.*, 44 Tex., 597.)   The purchasers of the prop-
erty which at the time even is the homestead, are not bound
to see that the proceeds are invested in another homestead.
(Story's Eq. Jur., secs. 1124–1135.)

III. It is respectfully submitted, that in no event could the
court below, under the law and evidence in this case, have
decreed to the plaintiffs below more than a lifetime interest
as a homestead in the land in controversy; and that it was
error to adjudge to them the absolute fee.

This brings us to the consideration of that very novel and
interesting question,—What, in law, is the homestead estate
of the wife in a community homestead ?

As the fee can never be in abeyance, our statute has wisely
placed it, as regards community property, during coverture
in the husband, as the active manager of the connubial part-
nership. (Paschal's Dig., art. 4642.)   In Jordan *v.* Peak,
38 Tex., 439, in speaking of a community homestead, it is
held, that the fee of the wife's separate property is in her,
but that the fee to the community is in the husband.   He
has the sole power of disposition of all the community proper-
ty, with the single restriction as to the homestead;—that he
cannot alienate without the consent of the wife.   If, how-
ever, he should make deed to the community homestead with-
out her consent, then what title passes to the purchaser ?
Our statute (Paschal's Dig., art. 998) says "that all aliena-
tions of real estate, made by any person purporting to pass
or assure a greater right or estate than such person may law-
fully pass or assure, shall operate as alienations of so much
of the right and estates in such lands, tenements, or heredita-
ments as such persons might lawfully convey."   Clearly, then,
such a deed would pass all the title he had the right to con-
vey, which, in such cases, would be the absolute fee, subject
to the homestead privilege.   As said in Allison *v.* Shilling,
27 Tex., 455, " The object of the Constitution, in this partic-

ular, is to secure the wife and family a home against the improvidence of the husband;" and if this object is not defeated, neither the letter nor the spirit of the law is defeated. In Stewart *v.* Mackey, 16 Tex., 57, the court says: "Were it not for the provision of the Constitution, that the owner of a homestead, if a married man, should not be at liberty to alienate the same, unless by consent of the wife, the husband would have the unquestionable power to dispose of it at pleasure. His right, his absolute right in the property, is not affected, but his power of alienation is restricted, and for the distinct and specific purpose of securing a homestead to the family. To effect this purpose, the wife, if living, must be consulted before the sale; and this for many reasons which might be enumerated, but especially that she might not be deprived of one homestead, without provision for the acquisition of another. The entire object of the law and the Constitution is to secure a homestead, and no infringement upon the husband's right of property, except such as may be necessary for the object designed, is intended by the law, or is to be presumed." The question in that case, was whether a mortgage, though ineffectual at the time of its execution, by reason of the property being then the homestead, and hence not subject to forced sale, could be subsequently enforced after this homestead had been abandoned and a new one acquired; and it was held that it could. As both the husband and wife were living in that, and also in the case now before the court, a different question is presented from that in Reeves *v.* Petty, 44 Tex., 249. Counsel cited Doyle *v.* Coburn, 6 Allen, (Mass.,) 71; Atkinson *v.* Atkinson, 37 N. H., 434; Gee *v.* Moore, 14 Cal., 472.

By section 52 of article 16 of the Constitution of 1876, it is clearly intended, not that the homestead interest, as a homestead, shall descend and vest according to the laws of descent and distribution, but simply that the estate out of which the homestead interest is carved shall so descend;—not to be

partitioned, however, until it ceases to be incumbered as a homestead.

By whatever name, then, it may be designated, it seems beyond all question, that the wife's interest in the homestead, as such, is simply a conditional life estate, and that this only, and not the absolute fee, could in any event have been adjudged to Mrs. Ricketts, much less could it have been adjudged to both husband and wife, as was done by the court below. For an elaborate and exhaustive article on this subject, the honorable Supreme Court is referred to Central Law Journal, vol. 3, No. 20, 327, in which, among many of the authorities above cited, are the following others: Vasey v. Board of Trustees, 59 Ill., 188; Smith v. Provin, 4 Allen, 516; White v. Rice, 5 Allen, 76; Woodbury v. Luddy, 14 Allen, 1; Abbott v. Abbott, 97 Mass., 138; Swan v. Stephens, 99 Mass., 7; Brettun v. Fox, 100 Mass., 235; Fletcher v. The State Capital Bank, 37 N. H., 396; Gunnison v. Twitchel, 38 N. H., 62; Horn v. Tufts, 39 N. H., 478; Meader v. Place, 43 N. H., 307; Bowman v. Norton, 16 Cal., 213; McQuade v. Whaley, 31 Cal., 528; Rich v. Tubbs, 41 Cal., 34; Kilgore v. Beck, 40 Ga., 293; Blivins v. Johnson, 40 Ga., 297.

*E. W. Bush,* for appellees.—The question involved is one of act and intention on the part of the wife, and not of the husband. The constitutional protection is intended for her benefit, very specially. She is no mere automaton or figurehead, nor the mere appendage to her husband, subsidiary to his will and subject to his directions. In respect to the ordinary community property, he is the head and agent for the marital firm, or partnership. He is so alike in respect to the separate property of his wife, in the management of the same, and his consent is necessary to its sale and the validity of her contracts; and, on the other hand, she is fully his equal in respect to the alienation of the homestead, and her consent is not only essential, but indispensable; and, as claimed by appellant's counsel, in brief, if they possess and own a home-

stead, and he alienates the fee without her consent, the purchaser can acquire no more than his right of property and what his marital relation enables him to convey; and the estate of the purchaser, and his right to use and possess it, and the time when he may so use and possess it, would, we presume, under the theory of appellant's counsel, depend on whether it was community, or his own or her separate property; and, in the last case, they will hardly claim that appellant would obtain any right, either in the present or the future.

The court's attention is called to the fact that the fourteen acres of land were purchased principally with the separate funds of the wife, and in no event did it become the separate property of the husband—the husband having paid some of the community funds towards the homestead.

The constitutional protection given to the wife must be construed so that it shall have the effect designed, and that the husband, as it emphatically declares, shall not be at liberty to alienate her homestead without her consent. If he may alienate her homestead without her consent, and by supplying her with another, (which was not done in this case,) in spite of her objections and protests, then he is certainly at liberty to alienate without her consent, the language of the Constitution is in effect reversed, and its promised assurances not only vain, but made the sport of the husband's will, in defiance of the fundamental law.

The mode of conveyance by the wife of her separate property and of the homestead of the family, as prescribed by the act of 13th April, 1844, in furtherance of the organic law, requires her acknowledgment and private examination, &c. Now, so far as it relates to her separate property, in Berry *v.* Donley, 26 Tex., 737, (opinion by Mr. Justice Moore,) the court held that the signature of the wife to a conveyance, without a privy examination and acknowledgment, is a nullity; that payment of the consideration by the purchaser does not strengthen his title; that the law charges the purchaser

with knowledge that the conveyance was invalid; and that if he is deceived or mistaken as to his title, it is through his own folly and neglect. Although the wife's right to the homestead is recognized by the Constitution, and the conditions for a valid conveyance or valid alienation of it by the husband are regulated by the same statute which I have referred to, this court has held that such acknowledgment is not necessary, nor that she should join in the conveyance of her rights to the homestead, provided she shall abandon it; (the most conclusive evidence of which being, as the court declares, the acquisition of another homestead;) but it must be clear, beyond a shadow of doubt, that she has so abandoned. And well may the court so declare, when the law requires that her intention shall be manifest, in so solemn a form, and by a mode so unequivocal as joining in the deed and being privily examined before an officer, to test the freedom of her choice and action in a case even where she expresses a willingness to, and actually does, sign the deed of conveyance. For my part, I do not perceive how the homestead right can be placed upon a ground less secure, or how the force of the statute can be less applicable to it, in requiring the wife's acknowledgment, &c., than in case of conveyance of her separate property.

Counsel, on the conveyance of separate property, cited Const. 1845, art. 6, sec. 22, Paschal's Dig., 1003; Cross v. Everts, 28 Tex., 532; Berry v. Donley, 26 Tex., 745. On the question of abandonment, he cited Gouhenant v. Cockrell, 20 Tex., 96; Shepherd v. Cassiday, 20 Tex., 24; Mills v. Von Boskirk, 32 Tex., 360; Woolfolk v. Rickets, 41 Tex., 358; Story's Confl. of Laws, sec. 47.

MOORE, ASSOCIATE JUSTICE.—A jury having been waived, the only question which it is necessary for us to consider in this case, is whether the judgment is warranted by the evidence, and the principles of law applicable thereto.

After a careful examination of the record, and giving full

weight to every reasonable presumption which can be fairly urged in support of the conclusion of the court, we feel constrained to say, that the evidence is, in our opinion, wholly insufficient to authorize or maintain its judgment. As was said when this case was before us on a former appeal, (41 Tex., 358,) it cannot be doubted the land sued for was the homestead of appellees in 1858, and so continued at least until their removal from it in 1860. But we think it equally evident, from the evidence in this record, that it had been abandoned as their homestead long before the institution of this suit. And, if necessary that we shall go so far, we should have no hesitancy in saying, that it is equally evident, from the evidence in the record, that it was abandoned as their homestead before its sale by appellee, R. J. Ricketts. As said in the case of the Houston and Great Northern Railroad Company·*v.* Winter, (44 Tex., 597,) the language of the Constitution exempting the homestead of a family from forced sale, and restraining the husband from selling it without the consent of the wife, does not define "its qualities, attributes, or shape," and, as we may add, its locality, further than is expressed in the use of the words, "homestead of a family not to exceed two hundred acres," &c., "which seems to imply that it was something that would be known without further description." The·evident object and purpose of this constitutional provision, as well as the inherent nature and essential requisites of a homestead for a family, and the obvious facts and circumstances manifest in the dedication of property to this purpose, were evidently supposed to be such as would plainly indicate the existence, as well as the particular locality and extent, of the homestead, to all persons interested in having cognizance of it. While the provisions of the Constitution in regard to the homestead were designed for the protection and security of families, they certainly were not intended to enable either the cunning, or reckless and indifferent, to entrap, to their injury, those using due diligence in dealing with the head of the family, or to put it into the

power of such persons to make innocent parties pay the penalty of their fraud or ignorance. Nor do I believe that there is the slightest danger that such consequences can result from the humane provisions of the Constitution in this particular, unless perverted and extended, by a strained and unwarranted construction, beyond their obvious purpose and plain import.

It is the homestead of the family to which the Constitution has reference. Now, while a family may own several different places of residence, certainly there cannot be, from the very nature of the thing, or in the sense of the Constitution, but one homestead at any particular time. And unquestionably, as a general rule, "a man's homestead must be his place of residence,—the place where he lives." (22 Tex., 502.) "The place of the house." (44 Tex., 610.) When the family have distinctly and unequivocally removed from one home, or "mansion house," and its adjoining land, and taken up their permanent abode and place of residence in another house, upon a different place, and where there is nothing connected with such removal and residence indicating that it is not intended to be permanent, certainly the presumption arises, if indeed the absolute conclusion is not warranted, in support of the title of one who has purchased it in good faith from the husband, that the place from which the family have gone is abandoned as their homestead. If the object or purpose of the removal is uncertain or equivocal in its character, no doubt the cotemporaneous declarations of either the husband or wife, if not inconsistent with, but tending to explain, the real import and purpose of such removal, would be entitled to much weight, and especially if openly and publicly made, and where their subsequent conduct is in conformity with such declarations. But, certainly, when there is an open and palpable abandonment of one home and a removal to another, and where every action of both the husband and wife, for a series of years, indicates that their removal from their old home was intended to be final and permanent, and

when their conduct—if we attribute to them a definite inten-
tion—would be inconsistent with good faith and fair dealing,
it would be most unreasonable to ask that the mere declara-
tions of the wife, that she did not intend to abandon the old
place as her homestead when she removed from it with her
husband, and had never subsequently designed or consented
to do so, should outweigh the contrary evidence furnished by
the acts and conduct of herself and husband during the pe-
riod of nine or ten years while residing elsewhere. Or if she
entertained any such intention, that this would be of any
effect, or could be regarded as sufficient to disprove the fact
that in truth the old place had been abandoned as the home-
stead of the family; or warrant its recovery by her and her
husband, notwithstanding he had sold and been fully paid
for it.

The evidence upon which the case was submitted to the
court not warranting the judgment in favor of appellees, it is
reversed, and cause remanded.

Reversed and remanded.