JASPER GIBBS AND JOSEPH HALLIDAY v. P. A. E. MAYES ET AL.

(March 17, 1880.)

HOMESTEAD — SUFFICIENT DESCRIPTION OF IN PLEADING.— When the homestead is situated upon a larger tract than two hundred acres and has not been laid off and surveyed, it is sufficient description in the pleadings to use the term "homestead." Charges given and refused, in the absence of a statement of facts or bill of exceptions, are not ordinarily the subject of revision upon appeal.

SAME — SALE WITHOUT CONSENT OF WIFE.— The sale of the homestead without the consent of the wife, and against her will, does not exclude her from asserting her right thereto, although her husband may acquire another domicile and homestead, to the acquisition of which she does not assent, and to the acceptance of which, as her homestead, she persistently protests. Intimation of McAdoo, J., in Holliman v. Smith, 39 Tex., 361, to the contrary is dictum.

ERROR from Freestone county.   Opinion by QUINAN, J.

The first objection urged by appellants in their brief is that the general demurrer should have been sustained as against Mrs. Manning's claim of homestead, and the reasons assigned are: 1. It was too vague. 2. It does not aver what sale was made without her consent and against her will, nor by or to whom the homestead was sold, nor whether it was a homestead in the city or the country. 3. Whether she claimed land or money. 4. It does not identify the land in any way. 5. That while alleging that the deed includes the homestead, and that it was sold without her consent and against her will, she does not aver that she did not sign the deed or that she did not acknowledge it.

A statement of what Mrs. Manning did allege will show that these objections are untenable. ·

1. She, with her co-plaintiffs, avers the conveyance to Gibbs, in July, 1863, by Reuben Manning, of about one thousand six hundred and ninety-three acres of land in one body, and the land is fully described in the deed and the boundaries of it set out by defendants.

2. She alleges "that the homestead of herself and the said Reuben Manning, Sr., was and is included in the said deed of conveyance from said Manning to said Gibbs, it being part of the land described in said deed, and that said homestead was sold without her consent and against her will," and she prays that her homstead right in and to the said premises may be restored and set apart to her, and for other relief, etc. We think this a sufficient statement of her claim, and we confess we do not perceive how, without incommendable prolixity, it could be made more ample. That it was necessary for her to allege more specifically what sale was made, or that she did not sign the deed, or that the land was not a town lot, or money, we do not think can be seriously urged.

There can be no more specific description of the home-

stead, when it is situated upon a larger tract of land than two hundred acres, than that embraced in the term homestead, unless indeed it has been actually laid off and surveyed. The law defines what it is. It is the residence of a family, and includes the house which shelters them, and in the country embraces, if the head of the family has it, two hundred acres of land, and no more.

The case of Anderson *v.* McKay is cited as an instance of defective allegation in showing "how and when the property was destined for a homestead." In that case there had been no actual residence upon the land, and it has, manifestly, no application to the present case.

The second objection is that the special demurrer should have been sustained. It went to the misjoinder of parties and actions or multifarious character of suit. The suit, when brought, was to set aside a conveyance made by Reuben Manning to Jasper Gibbs of land and other property on the alleged ground of fraud, undue influence, old age and imposition.

Manifestly his widow and heirs were necessary parties to that suit. But the appellant's counsel insist that, "whether their objection would have been good as the pleadings stood previous to sustaining his special demurrer, and striking out the prayer for a rescission of the contract, it was certainly good after that ruling was made." This is as much as to say that while the pleadings might not, as they first stood, have been obnoxious to the objection of multifariousness, yet they were clearly so when the greater part of the charges and allegations and causes of action stated in them were stricken out.

The result of the ruling of the court upon the demurrers was that the case then stood for trial as one of the Manning's heirs against Gibbs and Halliday for the recovery of the community interest of Manning's first wife in the property conveyed by Manning to Gibbs, and of Mrs. Elizabeth Manning for the recovery and setting apart to her of the homestead in the land in controversy. That she had a right

in some form to assert her claim in this suit will not be denied. There is no exception to the misjoinder of parties plaintiff. If it should be the consequence of the appellant's demurrer that she was no longer a proper party plaintiff, yet surely she would have the right to intervene in the suit for the assertion of her homestead rights, and we can see no necessity, and less propriety, in dismissing her at one door when she has an unquestionable right to demand admittance at another. In Clegg v. Varnell, Chief Justice Hemphill says that "there is not an inflexible rule as to what constitutes multifariousness. Each case must be governed by its own circumstances, and whether multifarious or not must be left to the sound discretion of the court." In this case the result shows that no injury has resulted to the appellant from the action of the court upon his exceptions, and he has, therefore, no just cause of complaint.

The third objection of appellant is that the verdict is not warranted by the pleadings. What we have said upon appellant's exceptions to the allegations of Mrs. Manning is applicable to this objection. Her allegations were, we think, sufficiently specific; and if they were not, it is one of the properties of the verdict that "it cures all defects, imperfections or omissions in the petition or statement of the cause of action, whether of substance or of form, if the issues joined be such as require proof of the facts imperfectly stated or omitted, though it will not cure or aid a statement of a defective cause of action." Dewitt v. Miller, 9 Tex., 246; 1 Chit. Plead., 712, 722; 22 Tex., 409; 2 Tex., 209.

If there were not in her petition a sufficient description of the homestead place she claimed, it is not an objection to the verdict that it supplies the omission. We concur in the statement of appellant's counsel, " a plaintiff can get all he claims in his pleadings, and he can get no more." He can get what he claims, and nothing else. Here she claims a homestead out of some of the lands in controversy, and all that the jury could respond was, "We give you a home-

stead out of the lands." And this we think is precisely what the jury have done, and no more. The verdict awards her the Reuben Manning homestead, which the law says is the place of his domicile, and contains two hundred acres of land; and, for further identification, the jury says that Jasper Gibbs now resides on it. This verdict is not only correct, but the only verdict which the jury could render, if satisfied that Mrs. Manning and her deceased husband had a homestead upon the place to which she was now entitled.

It is almost a contradiction in terms to say that the jury could have given her two hundred acres of land anywhere — they could only award her the homestead.

The remaining objections to be considered go to the charges of the court. The charges given and refused, in the absence of a statement of facts or bill of exceptions, are not ordinarily the subject of revision upon appeal, as said by Judge Bell in Bast v. Alford, 22 Tex., 399. The charge of the court appears to be correct, and if it did not so appear, it is the well-established rule of this court that the charge of the judge below will not be revised unless there be a statement of facts in the record; except in the case where the pleadings contain matter which shows that the charge is necessarily erroneous.

And in McMullen v. Kelso, 4 Tex., 237, Hemphill, C. J., says: "There being no facts sent up with the record, it will be unnecessary to examine further the above instruction or the one which was asked and refused. They stand upon the record as abstract propositions; and whether the giving the one or refusal of the other operated injuriously to the defendant cannot be ascertained from the record, and can form no ground for revision or reversal of the judgment." And again, in Cannovan v. Thompson, 12 Tex., 247, the same judge says: "As no statement of facts has been sent up with the record, the judgment must be presumed to be correct, and must be sustained." Some of the charges of the court, it is true, are utterly erroneous and

subversive of the law of the land, as repeatedly declared by this court; but there were substantial grounds of defense as pleaded, and if these, or any of them, were supported by evidence, the jury were authorized to find their verdict.

So, in McGaughey v. Bendy, 27 Tex., 534, it is held by Moore, J., that, there being no statement of facts or bill of exceptions, the court will not revise the judgment unless the error in the charge is so glaringly apparent, when taken in connection with the pleadings and verdict, as to leave no doubt that the finding of the jury must have been controlled by the improper instruction which they received from the court.

Testing the force of the appellant's objections to the charge of the court in the light of these decisions, we are of opinion that they are not well taken. We must assume, in favor of the verdict, that every fact was proven which it was necessary to prove to sustain it, and that no fact was in evidence which would vitiate it. If we admit that, as abstract legal propositions, the charges of the court are subject to criticism, yet we must presume, in support of the verdict, that they were mere abstractions; that there was no proof offered which required they should be given, and it is not clearly made to appear that the giving or the refusal of them operated to the injury of the appellants, even if a statement of facts had been sent up, if that statement failed to show an abandonment by the wife of her homestead, or her acquiescence, in the mode the law prescribes, in the sale of her homestead; if upon these subjects there was no proof, surely the judgment could not be reversed on the complaint of the appellant.

But we are not prepared to admit that the action of the court in giving or refusing charges was necessarily or glaringly erroneous. If it were required for the disposition of this case, we should be inclined to hold that the charges state fairly the law applicable to it. They maintain substantially the proposition that a sale of a homestead without the consent of the wife, and against her will, does not

exclude her from asserting her right thereto, although the husband may acquire another domicile and homestead, to the acquisition of which she does not assent, and to the acceptance of which, as her homestead, she persistently protests.

In support of the contrary doctrine we are referred to the case of Holliman v. Smith, 39 Tex., 361, in which Judge McAdoo says: "The husband is the head of the family. He, not the wife, chooses and establishes the homestead, and when he establishes it as his homestead, whether she be willing or unwilling, it becomes her homestead. . . . When he sees fit to change the homestead and dedicates another, *eo instanti* his homestead becomes that of his wife and family also." Now, if this be good law, we ask with becoming deference what becomes of that provision of the constitution which commands that the owner of the homestead, if a married man, shall not be " at liberty to alienate the same, unless by consent of the wife, in such a manner as the legislature may hereafter point out?" And what effect shall we give to the law made in pursuance of it, which provides that, when the husband and wife have executed a conveyance of the homestead of a family, her privy examination shall be had to the free and voluntary execution of it before the officers authorized by law to take such acknowledgments, and without which her deed is a nullity? It is to be observed, however, that this observation of Judge McAdoo is the merest *dictum*, and unnecessary to the decision of the case, which was doubtless rightly decided upon the facts. There are some observations of Judge Moore in Woolfolk v. Rickets, 48 Tex., 28, which intimate that the mere declaration of the wife that she did not intend to abandon the old place as her homestead, and had never subsequently consented to it, should not be permitted to outweigh the contrary evidence furnished by the acts and conduct of herself and husband for a long series of years, or regarded as sufficient to disprove the fact that in truth the old place had been abandoned as a homestead of

the family, or warrant its recovery by her and her husband when he had sold and been fully paid for it.

But that is, as is said, " when there is an open and palpable abandonment of one home and a removal to another, and when every action of both the husband and the wife for a series of years indicates that their removal from their old home was intended to be final and permanent." But in this case, also, the proof was that the homestead had been abandoned before the sale, openly and notoriously.

We understand that a married woman cannot be permitted to perpetuate a fraud; that, as in Holliman v. Smith, she cannot be permitted, while in the actual possession to all appearances of a permanent home, to encourage the sale of a former homestead, and afterwards be allowed to claim it as never intentionally abandoned; but in the present case we assume that, at the time of the sale to Gibbs, Manning and wife were in possession of the homestead; that she refused to join in the sale; that she never in any manner, then or at any time afterwards, whether in the mode prescribed by law or otherwise, assented to the sale; there is no proof of the acquisition, with her consent, of a new homestead. Gibbs must be presumed to have known that Manning's deed, without her acknowledgment, was insufficient to preclude her from asserting her right to the homestead when she could; he must be presumed to have notice of her intention so to do; and, as applicable to this state of facts, we do not hesitate to express our conviction that the charge of the judge was, to say the least of it, not " glaringly erroneous."

It only remains to add the judgment is supported by the pleadings, the verdict and the law; that there is no error in it, and it ought to be affirmed.