ELIZABETH SLAVIN v. JUBE WHEELER.

(Case No. 5092.)

1. HOMESTEAD — HUSBAND AND WIFE — ABANDONMENT.— One who owned and occupied with his wife a rural homestead, left it and with his family removed to a place in town owned by himself and his wife, where he was residing when, in 1863, he sold the old home, receiving the purchase money, and giving his individual bond for title. The land was occupied by the purchaser and his vendees until 1881, when the wife sued to recover it, claiming homestead rights; that she knew nothing of the sale; was not consulted, and never consented to abandon it as a homestead. At the time

of bringing suit she was residing on a place quite as valuable, owned by her husband and herself. On the trial the court charged the jury, among other things, as follows: "If you believe from the evidence that James B. Slavin (the woman's husband), acting in good faith toward his wife, and with no intent to defraud his wife out of her homestead rights, moved upon another place of his own, with a view of abandoning his old homestead and acquiring a new one, you will find for defendant." *Held:*

(1) There being evidence that the husband, who refused to join the wife in the suit, had changed his homestead in good faith for what he believed was for the interest of his family, there was no error in the charge.

(2) The urban home place was in law and in fact the homestead at the time of sale, and this was not affected by the fact that the place in the country, formerly occupied by the family, may have been cultivated by the family after its removal to town.

(3) The most satisfactory evidence of the abandonment of one homestead is the acquisition of another.

(4) The doctrine that the right to determine where the homestead shall be depends on the arbitrary will of the wife has no sanction in law, and is opposed to the laws of nature, which make the husband the head of the family, and whose will in selecting a home for its protection and support, when honestly exercised, ought not to be lightly disregarded.

Appeal from Grayson. Tried below before the Hon. Richard Maltbie.

Appellant, Elizabeth Slavin, the wife of J. B. Slavin, instituted this suit of trespass, to try title and for damages against J. B. Slavin and Jube Wheeler, on the 15th day of February, 1881. Wheeler filed his amended original answer of general denial, plea of not guilty, stale demand and improvements made in good faith. All claimed through Pringle as the common source; the appellant by bond for title and by deed from Pringle to her husband, J. B. Slavin, one of the defendants; Wheeler claimed by bond for title from J. B. Slavin, one of the defendants, to S. C. Thornton, and by deed from Thornton to him. Appellant claimed the land as her homestead and that she had never sold it or consented to its sale.

Verdict and judgment in favor of Wheeler.

It was assigned as error that the court erred in its eighth charge to the jury, which is as follows: "If you believe from the evidence that James B. Slavin, acting in good faith towards his wife, and with no intent to defraud his wife out of her homestead rights, moved upon another place of his own, with a view of abandoning his old homestead and acquiring a new one, you will find for the defendant," because the effect of such charge is to take from the wife the power to assert and maintain her homestead rights.

The evidence for the plaintiff shows that the husband contracted a sale of the homestead and gave bond for title, while living on

another place owned by him or by him and his wife in town; that the wife never consented to the sale or executed any deed of conveyance, or bond for title; that she had refused to recognize the sale and claimed the property as a homestead and had never claimed any other. Plaintiff and family were living near the land at the time of the sale to Thornton, and plaintiff's children cultivated the land after they had moved to the town of Macomb. There was evidence that the husband was going into the army, and appellant, his wife, was afraid to remain on the land during his absence and moved to Macomb for company and safety.

J. B. Slavin, the husband of appellant, bought the land in 1861, and lived on it until a short time before he made the sale to Thornton; there was no deed made to Thornton, only bond for title given, which appellant did not sign. Mrs. Slavin and her children cultivated the land both before and after they moved to Macomb, and were cultivating it at the time it was sold. She testified that as soon as she found out that her husband had made the trade she refused to sign any papers transferring the land, and told every person who talked to her about it, that it was her homestead and that she would never part with it; that she told this to her husband and to a good many others, and told it a good many times; that she did not know anything about the trade until after it was made and the greater part of the money paid; that she had always claimed that place as her homestead and never had claimed any other; that she was prevented by her husband from bringing suit for the land sooner; that she came to Sherman ten or twelve years before bringing this suit and consulted a lawyer about bringing suit for the land, but her husband's opposition kept her from bringing it.

On the 1st day of May, 1863, J. B. Slavin sold the land to Thornton and gave him a bond for title. September 5, 1870, Thornton and wife made a deed to the land to defendant Wheeler. Jube Wheeler, one of the defendants, testified that he bought the land from Thornton on the date mentioned in the deed, and paid for it before he heard of any objection on the part of Mrs. Slavin and before he heard of her claiming it as a homestead; that he heard of such claim soon after he bought it. Slavin and wife lived near enough to the land to have cultivated it without inconvenience; that plaintiff lived near and saw witness making improvements and made no objections. Other facts are stated in the opinion.

*Finley & Pasco*, for appellants, to show error in the charge of court, cited: Const. of 1845, art. 7, sec. 22; Pasch. Dig. of Laws,

art. 1003; Gibbs & Halliday *v.* Mayer *et al.*, 4 Tex. Law Journal, 67, 68; Cox *et al. v.* Harvey, 4 Tex. Law Journal, 83, 84; Willis & Bro. *v.* Kirbie, 4 Tex. Law Journal, 25; Rogers *v.* Renshaw, 37 Tex., 625; Taylor *v.* Hargous, 4 Cal., 268; Thompson on Homesteads and Exemptions, secs. 474 and 513; Hair *et al. v.* Wood *et al.*, 1 Tex. Law Rev., 23; Medlinka *et al. v.* Downing *et al.*, 1 Tex. Law Rev., 116; McMillan *v.* Warner, 38 Tex., 414–416; Mills *v.* Van Boskirk, 32 Tex., 360; Thomas *v.* Williams, 50 Tex., 269; Shepherd *v.* Cassiday, 20 Tex., 24, 29; Cross *v.* Everts, 28 Tex., 523, 532–5; Mainwarring *v.* Templeman, 51 Tex., 212–13; 44 Tex., 263 -265; Watkins *v.* Edwards, 23 Tex., 447–450; McKee *v.* Wilcox *et al.*, 11 Mich., 358; Ayers *et al. v.* Shockey, 3 Tex. Law Rev., 164.

*Hare & Head*, for appellees, cited: Halliman *v.* Smith, 39 Tex., 357; Smith *v.* Uzzell, 56 Tex., 315; Thompson on Homesteads, 276.

STAYTON, ASSOCIATE JUSTICE.— It appears that sometime prior to the 1st day of May, 1863, J. B. Slavin and his wife, who is the appellant, lived on the land in controversy, but that prior to the date mentioned they had ceased to live on the land and were living in the town of Macomb, on a place which was probably the community property of Slavin and wife.

While they were living in Macomb, on May 1, 1863, Slavin sold the land in controversy to Thornton, under whom the appellee holds.   Thornton paid for the land, and, according to the testimony of Slavin as of others, the bond for title made to Thornton by Slavin was not executed by the appellant, for the reason that it was not then claimed or believed to be by Slavin any part of his homestead.

There is some conflict of evidence as to whether Mrs. Slavin knew of the sale of the land and consented thereto.   She states that she did not, and that she always intended to return to the place to live; and she further stated that she and her children cultivated it after they moved into the town of Macomb.   The appellant and her husband continued to live in the town for several years, keeping a tavern; after which Slavin bought another tract of land on the same grant as that in controversy, which was improved, and to which he and his family moved, where they resided until about June, 1882, at which time, Slavin having been appointed postmaster at Whitesboro, they removed to that place, where they were living in a rented house at the time of the trial in the court below.

At the time of the trial Slavin still claimed the place to which he

removed when he left Macomb as his homestead, but his wife claimed the land in controversy as her homestead. This tract contains forty acres and that claimed as homestead by Slavin contains sixty acres, which is shown to be as valuable as the land in controversy, as well improved, and conveniently situated.

The appellee bought the land in controversy in September, 1870, paid full value for it, and this, it seems, without notice of the claim of Mrs. Slavin. The land has been greatly improved since it was sold by Slavin. It seems that Mrs. Slavin has intended for many years to sue for the land, but was dissuaded by her husband, who, in consequence of his refusal to join his wife in this suit, is made a party defendant. The land in controversy lies without the limits of the town of Macomb, but near to it.

The court gave to the jury a very full and fair instruction, clearly submitting to them whether, at the time of the sale by Slavin to Thornton, the former, with his family, had abandoned the property in controversy as a homestead.

It is urged, however, that the court erred in giving the following instruction: "If you believe, from the evidence, that James B. Slavin, acting in good faith towards his wife, and with no intent to defraud his wife out of her homestead rights, moved upon another place of his own, with a view of abandoning his old homestead and acquiring a new one, you will find for the defendant."

The facts in proof were ample to justify the finding that, at the time Slavin sold the land to Thornton, it had ceased to be the homestead of himself and family. He and they had removed to another which they owned, and whatever may have been the intention of the wife, it is evident that Slavin never expected again to occupy it as a home; that such was his intention is manifested not only by what had transpired before the sale to Thornton, but by his continued assertion for about twenty years of homestead claim to other land which during that time was owned and occupied by himself and family as a home.

There was evidence which showed that the husband, in good faith, with no desire to injure his wife, prompted alone by what he conceived to be for the best interest of the family of which he is the recognized head, left the land in controversy with intent never to use it again as a home, and that he established a home on other land to which he had title.

Such facts being shown, or at least there being evidence tending and sufficient to prove such facts, we are of the opinion that the court did not err in giving that part of the charge complained of.

in connection with the other parts of the charge.  Stewart *v.* Mackey, 16 Tex., 56; Holliman *v.* Smith, 39 Tex., 361; Woolfolk *v.* Ricketts, 48 Tex., 37; Smith *v.* Uzzell, 56 Tex., 318.

At the time of the execution of the bond for title by Slavin to Thornton, and at the time the latter paid the former for the land, Slavin with his family were occupying in the town of Macomb a place which he, or he and his wife, owned, which they used as a home. This, then, was in law and in fact at that time the homestead of the family; and the fact that the land in controversy may have been cultivated by the family after they made their home in the town could not give them any homestead right in the rural property; for the homestead cannot be of a mixed character.  Rogers *v.* Ragland, 42 Tex., 422.

It has often been said that the most satisfactory evidence of the abandonment of a place once a homestead is the acquisition of another.  Tested by this, the land in question was doubly abandoned as a homestead.

It is contended in this case that a homestead is not abandoned so long as a wife, who may have voluntarily removed to another with her husband and children, may retain an intention to return to it, even though the husband may have no such intention, and may have provided another, of which he or the community is the owner, equally as valuable, comfortable, and every way desirable as the one formerly occupied, and suited to his business.

In other words, it is contended that the right to determine where the home shall be depends on the arbitrary will of a wife.

Such a proposition finds no sanction in law, and is in opposition to those laws of nature which make the husband the natural head and protector of the family, whose will, when justly and not capriciously or fraudulently exercised, to enable him properly to fulfill this high trust, ought not to be lightly disregarded.

The constitution protects to the wife the home of the family; and an attempt of the husband fraudulently to abandon it, prompted by malice or desire to deprive the wife of a home, would prove futile. There is nothing in this case to indicate any such disposition; were there, her right to protect herself in a home in such case has been recognized by this court in many cases.  There cannot be one homestead for the wife and another for the husband, for the law protects but one to the entire family.  No good reason can be given why, in the absence of some wrong by the husband, the determination of where the home shall be shall be left to the wife.  We may say of the wife as was said by Field, Chief Justice, in Guiod *v.* Guiod, 14

Cal., 507: "She is bound by her marital obligations to live with him, and when he changes his place of residence she must accompany him. There is no obligation resting upon him to permanently occupy the same place; indeed, the highest interests of himself and family, their health and maintenance, and the proper education of his children, may require a relinquishment of the homestead." This language, under the facts of the present case, is not too strong; cases, however, may arise in which the right of the wife to remain in, and to retain the title to the home in some member of the family, would be so sustained as to give full effect to the laws which protect the family in their home, even against the will and acts of the natural head of the family.

The court, under the facts of this case, did not err in giving the charge complained of, nor in overruling the motion for a new trial, and the judgment is affirmed.

AFFIRMED.

[Opinion delivered May 30, 1884.]