## ELIZABETH SLAVIN v. JUBE WHEELER ET AL.

### SUPREME COURT OF TEXAS, AUSTIN TERM, 1884.

*Husband and Wife—Home.*--The husband is by the laws of nature the head and protector of the family, and it rests with him to determine where the home of the family should be.

*Homestead—Abandonment.*—When the family remove from the place occupied as a homestead, with no intention on the part of the husband ever to return to it, or make it his home, and another home is secured and occupied by the family of equal value, comfort and convenience, the homestead rights of the wife are lost, although she may never have intended to abandon them.

Appeal from Grayson county.

Stayton, J.: It appears that sometime prior to the 1st day of May, 1883, J. B. Slavin and his wife, who is the appellant, levied on the land in controversy, but that prior to the date mentioned they had ceased to live on the land, and were living in the town of Macomb, on a place which was probably the community of Slavin and wife. While they were living in Macomb, in May 1, 1883, Slavin sold the land in controversy to Thornton under whom the appellee holds. Thornton paid for the land, and according to the testimony of Slavin as of others, the bond for title made to Thornton by Slavin was not executed by the appellant for the reason that, it was not then claimed or believed to be by Slavin, any part of his homestead. There is some conflict of evidence as to whether Mrs. Slavin knew of the sale of the land and consented thereto. She states that she did not, and that she always intended to return to the place to live; and she further stated, that, she and her children cultivated it after they had moved into the town of Macomb.

The appellant and her husband continued to live in the town for several years, keeping a tavern; after which Slavin bought another tract of land on the same grant as that in controversy which was improved, and to which he and his family removed, where they re-sesided until about June 1882, at which time Slavin having been ap-

pointed postmaster at Whitesboro, they removed to that place where they were living, in a rented house, at the time of the trial in the court below. At the time of the trial, Slavin still claimed the place to which he removed when he left Macomb, as his homestead, but his wife claimed the land in controversy as her homestead. This tract cuntains forty acres and that claimed as a homestead by Slavin contains sixty acres, which is shown to be as valuable as the land in controversy, as well improved, and conveniently situated. The appellee bought the land in controversy in Sept., 1870; paid full value for it, and this, it seems without notice of the claim of Mrs. Slavin. The land has been greatly improved, since it was sold by Slavin. It seems that Mrs. Slavin has intended for many years to sue for the land, but was dissuaded by her husband, who in consequence of his refusal to join with his wife in this suit is made a party defendant. The land in controversy lies without the limits of the town of Macomb, but near it.

The court gave to the jury a very full and fair instruction, clearly submitting to them whether at the time of the sale by Slavin to Thornton, the former with his family had abandoned the property in controversy as a homestead. It is urged, however, that the court erred in giving the following instruction: "If you believe from the evidence that James B. Slavin, acting in good faith towards his wife, and with no intent to defraud his wife out of her homestead rights, moved upon another place of his own, with a view of abandoning his old homestead and acquiring a new one; you will find for the defendant."

The facts in paoof were ample to justify the finding that at the time Slavin sold the land to Thornton, it had ceased to be the homestead of himself and family. He and they had removed to another, which they owned, and whatever may have been the intention of his wife, it is evident that Slavin never expected again to occupy it as a home; that such was his intention is manifested not only what had transpired before the sale to Thornton, but by his continued assertion for about twenty years of homestead claim to other land, which, during that time, was owned and occupied by himself and family as a homestead.

There was evidence which showed that the homestead, in good faith, with no desire to injure his wife, prompted alone by what he conceived to be for the best interest of the family of which he is the

recognized head, left the land in controversy with intent never to use it again as a home, and that he established a home on other land to which he had title. Such facts being shown, or at least there being evidence tending, and sufficient to prove such facts, we are of the opinion that the court did not err in giving that paat of the charge complained of, in connection with other parts of the charge. (Stewart v. Mackey, 16 Tex., 56; Holliman v. Smith, 39 Tex., 361; Woolfork v. Ricketts, 48 Tex., 37; Smith v. Uzzell, 56 Texas, 318.)

At the time of the execution of the bond for title by Slavin to Thornton, and at the time the latter paid the former for the land, Slavin with his family were occupying in the town of Macomb a place which he, or he and his wife owned, which they owned as a home. This then was in law and in fact at that time the homestead of the family, and the fact that the land in controversy may have been cultivated by the family after they had made their home in the town, could not give them any homestead rights in the rural property; for the homestead cannot be of a mixed character. (Rogers v. Ragland, 42 Tex., 422.)

It has often been said that the most satisfactory evidence of the abandonment of a place once a homestead, is the acquisition of another. Tested by this, the land in controversy was doubly abandoned as a homestead.

It is contended in this case, that a homestead is not abandoned so long as a wife, who may have voluntarily removed to another with her husband and childeen, may retain an intention to return to it, even though the husband may have no such intention, and may have provided another of which he or the community is the owner, equally as valuable, comfortable, and every way desirable as the one formerly occupied, and suited to his business. In other words, it is contended that the right to betermine where the home shall be, depends on the arbitrary will of a wife.

Such a proposition finds no sanction in law, and is in opposition to those laws of nature which make the husband the natural head and protector of the family, whose will when justly and not capriciously or fraudulently exercised, to enable him to fulfill this high trust, ought not to be lightly disregarded.

The constitution protects to the wife the home of the family, and an attempt of the husband frudulently to abandon it, prompted by

malice or desire to deprive the wife of a home would prove futile. There is nothing in this case to indicate any such disposition; were there her right to protect herself in a home in such case has been recognized by this court in many cases. There cannot be one homestead for the wife and another for the husband, for the law protects but one to the entire family. No good reason can be given why, in the absence of some wrong by the husband, the determination of where the home shall be, shall be left to the wife. We may say of the wife as was said by Field, Chief Justice, in Guiod, 14 Cal., 507, "She is bound by her marital obligations to live with him, and when he changes his place of residence, she must accompany him. There is no obligation resting upon him to permanently occupy the same place; indeed, the highess interest of himself and family, their health and maintenance, and the proper education of his children may require a relinquishment of the homestead." This language under the facts of the present case, are not too strong; cases however may arise in which the right of the wife to remain in, and to retain the title to the home in some member of the family, would be so sustained as to give full effect to the laws which protect the family in their home, even against the will and acts of the natural head of the family.

The court, under the facts of this case, did not err in giving the charge complained of, nor in overruling the motion for a new trial, and the judgment is affirmed.