### MARY D. SANBURN v. TINA DEAL.

### No. 166.

1. **Homestead—Abandonment.**—See facts held to show an abandonment of the homestead by the widow.   The property was the homestead of the family at the husband's death.

2. **Same—Cases Adhered to.**—Philleo v. Smalley, 23 Texas, 503; Woolfolk v. Ricketts, 48 Texas, 37; and Slavin v. Wheeler, 61 Texas, 659, adhered to, as to evidence fixing a homestead.

3. **Payment of Encumbrance by a Tenant in Common—Subrogation.**—The husband died leaving no children, but a sister and his widow. The homestead was encumbered by lien.   Out of the community property the widow made improvements and discharged the encumbrance.   In suit by the sister for half of the homestead, it having been abandoned by the widow, *held*, that such improvements and payments should be accounted for as community; the homestead being the separate property of the husband, and the community would be entitled to be reimbursed to that extent.   As the widow, in absence of children, inherits the community property, it is immaterial whether such payments were made out of the community, or from her separate estate.

APPEAL from El Paso.   Tried below before Hon. T. A. FALVEY.

*Millard Patterson* and *C. N. Buckler*, for appellant.

*Homestead.*—"Unquestionably, as a general rule, a man's homestead must be his place of residence; the place where he lives; the place of the house."   Woolfolk v. Ricketts, 48 Texas, 37; Railway v. Winter, 44 Texas, 610; Philleo v. Smalley, 23 Texas, 502; Holliman v. Smith, 39 Texas, 362.   "The place which is used as the home is in law and fact the homestead."   Slavin v. Wheeler, 61 Texas, 659.   Acquiring and

moving into another house and mortgaging the old homestead is an abandonment of it.   Stewart v. Mackey, 16 Texas, 56.   "The object of the Constitution in this particular is to secure the wife and family a home, but it did not intend to jeopardize the rights of others."   Allison v. Shilling, 27 Texas, 450.   "The most satisfactory evidence of the abandonment of a place once a homestead is the acquisition of another."   Slavin v. Wheeler, 61 Texas, 659.   "There is one circumstance, however, by which the fact of abandonment may be conclusively proved, and that is where the owner of the place has not only removed, but has established a new home elsewhere."   Thomp. on Home. and Ex., sec. 279.   Where a widow built a house elsewhere and moved into it and occupied it for several years, held, an abandonment of the homestead left by the husband.   Paul v. Paul, 136 Mass., 286.

*Contribution.*—1.   The principle of contribution only applies where the party paying was under a legal obligation to pay.   Shillin v. Merrill, 16 Mass., 40; Lucas v. Ins. Co., 6 Cow., 635; Haley v. Ins. Co., 12 Gray, 545; Tompkins v. Hill, 28 Ill., 519; Adams' Eq., 267, and cases cited.

2.   The voluntary act of one party in expending money for the benefit of all will not create a right to contribution.   7 Wait's Act. and Def., 625; Webster's Appeal, 86 Pa. St., 409; Watson v. Wilcox, 39 Wis., 643; Aldrich v. Aldrich, 56 Vt., 324.

3.   A payment is deemed to be compulsory when the party making it can not legally resist it.   Aldrich v. Aldrich, 56 Vt., 324.

4.   A surety who has neglected to interpose a legal defense can not claim contribution from his cosurety.

*T. L. Nugent*, for appellee.—1.   Abandonment of the homestead is accomplished not by going away from it without any intention of returning at any particular time in the future, but by going away with the definite intention never to return at all.   Foreman v. Meroney, 62 Texas, 726; Gouhenant v. Cockrell, 20 Texas, 96; Shepherd v. Cassiday, 20 Texas, 29; Cline v. Upton, 56 Texas, 322; Sanders v. Sheran, 66 Texas, 656; Graves v. Campbell, 74 Texas, 578.

2.   The right of contribution exists in favor of a cotenant who has paid off a valid lien against the common estate.   Freem. on Coten. and Part., sec. 263.

3.   If any part of the aggregate sum paid by defendant in discharging the liens of the building and loan association was usurious, the plaintiff, to avail herself of such fact, should have set it up specially by way of reply to defendant's answer.   Sayles' Civ. Stats., art. 2971.

COLLARD, ASSOCIATE JUSTICE.—Action of trespass to try title, brought on the 22nd of August, 1888, by the appellant against the appellee, for

an undivided half of lots 16 and 17 and northerly half of lot 18 in block 252, in the city of El Paso, according to what is known as Campbell's map of said city.

Among other defenses, the defendant set up that the lots sued for were the homestead of herself and her husband, and were still her homestead.

The lots were acquired by B. F. Deal before his marriage with defendant; he died, leaving no children, his wife (defendant) and his sister (plaintiff) being his only heirs, the parties thus each inheriting one undivided half of the lots.

But defendant, Mrs. Deal, sets up in her answer, that before her marriage with Deal, he negotiated a loan from the El Paso Building and Loan Association for $1200 and $200, giving his notes for the amounts, of date respectively the 23rd of August, 1883, and 20th November, 1883, bearing 10 per cent interest, securing the same by deeds of trust to Joseph Gist, president of the association, on the lots, which deeds of trust or mortgages were attached to the petition, marked exhibits B and C, and made a part of the answer, which $1400 was used by him in erecting improvements upon the lots, including the homestead, upon which he and defendant lived, all of which has been paid; that before his death he paid $51.19 out of community funds, and since his death she has paid $1248.80 out of her separate estate, and if not out of her separate estate, then the payments made by her were out of the community of herself and deceased husband, which payments are shown by exhibit attached to answer, marked exhibit A, and made a part of the answer; that during the marriage, Deal expended in erection of other improvements (an addition to the residence) at cost of $55 or $60, of which $30 or $35 was defendant's separate property; that since his death, in addition to the foregoing, she has expended in necessary repairs upon the property $229.50 of her separate estate, shown by itemized account, and also all the taxes due on the property. She further answered, that the lots were only worth $400, and that the improvements placed on the property by her and her deceased husband were of the value of $1400, and that since his death she has received from the temporary renting of the premises not more than $500. The answer prayed that she recover the improvements, and if plaintiff should recover one-half of the lots, that she (defendant) recover of plaintiff the value of the improvements, as well as amount expended for repairs and taxes; and if such relief could not be granted, then that she be subrogated to the rights of the loan association, and for foreclosure of the deeds of trust, for sale, etc.; and in case such specific relief could not be granted, then for judgment fully protecting her rights with respect to all the payments made by her, and in paying taxes and for repairs, and for general and special relief.

The cause was tried before a jury May 17, 1890, and resulted in a verdict and judgment to the effect, that appellant was the owner of one-half

of the land in controversy, and that the property constituted the homestead of appellee; and that B. F. Deal paid on said debts before his marriage $201.72, and after his marriage $50.41 out of his separate estate, and that appellee paid on said debt out of her separate estate $1187.85; and that the value of the property with the improvements was $1350, and without the improvements $750. Upon this verdict the court rendered judgment in favor of the appellee for the several amounts found by the jury to have been paid out on said debt by her out of the community property and her separate estate, and decreed that one-half of the claim in favor of appellee should constitute a lien upon appellant's interest in the property, and adjudged that the property was the homestead of appellee, and not subject to partition. Plaintiff has appealed.

*Opinion.*—Appellant assigns error as follows: " The finding of the jury as to the homestead is not supported by the evidence, in this: The evidence shows conclusively that the defendant had ceased to occupy the premises in controversy as a homestead long prior to this suit, and the same were not her homestead at the time of the trial."

We think this assignment is well taken.

Barron F. Deal and defendant, Tina Deal, were married on the 4th of December, 1883, and he died in May, 1885. The title to the lots in controversy was in his name, having been purchased by him before marriage.

Mrs. Deal testified: " I was living in my store at the time of marriage. Immediately after marriage, we moved into the little 'green house' located on the lots described in plaintiff's petition, two and one-half lots. They belonged to my husband, Barron F. Deal, before our marriage. The house was built before our marriage; after our marriage he added a little room for a kitchen and a shed. I have two children by former husband—two girls, aged 12 and 18 years. Mr. Deal borrowed the money to build the house from the El Paso Building and Loan Association. We lived in the little green house from the time of marriage until his death, in May, 1885. Shortly after his death I moved out of the same and went and lived in the back part of my millinery store for awhile, and then built a brick house in another part of the city of El Paso, on El Paso Street, and moved into it with my family. The little green house is on Campbell Street. I left it because it was too far from my business. I was in the millinery business, and am still engaged in that business. I did not like to go to the little green house from my business at night; it was not close to my other house, and was some distance out. It was on the other side of the railway, and I had to go by the depot at night. I had a girl living with me. Since I moved away from it, in the spring of 1885, I have rented it when I could My intention was to return to it as my homestead, and I intend it yet as my home, and never intended to abandon it. I moved from my store to the brick house on El Paso Street

in the spring of 1886. The brick house is a nice one. I built it on lots owned by me out of money I obtained from the El Paso Building and Loan Association. I built it and moved into it in order to be nearer my business, and there were houses near it, and in going to it I did not have to pass near the depot. My children are now in Missouri, one at school and one at a relative's, and since they went away, about six months ago, I have been boarding at Mrs. Brooks' and lodging at Mrs. Lyons', and have had my brick house rented, with my furniture in it. The brick house is not fully paid for. It cost about $3000, besides the lots, which are worth about $1000. I owe about $1500 on it yet."

She then testified as to payments made to satisfy the loan and mortgages on the " green house " and improvements, other issues, and as follows: " I lived in the little green house a short time after my husband's death, and then moved to my store. About May, 1886, my brick house was finished on El Paso Street, and I moved there with my family. I still own the brick house. It is rented by the month while I and my children are away. When I moved into the brick house, I did not intend to give up the little green house entirely as my homestead. The brick house has been my home since I built it in May, 1886, but it was only my temporary home. I thought if I ever quit the millinery business and sold the place where I now live—the brick house—I would move back to the little green house. This expresses my intention about the matter. When I built the brick house, I intended to live in it, and told other persons so. I built it to live in it. I don't know how long I intended to live in the brick house. I built it because I would be nearer to my business. The brick house has six rooms and basement, and is built in a good neighborhood on one and one-half lots. It is a neat, convenient place, and is conveniently located with respect to my place of business. My children will be back this fall. I did good business during our marriage and before husband's death. I have had the little green house property in controversy rented during a part of the time since my husband's death. The house was not idle much after I left it up to January 1, 1889. I can not say how much rents I have received from it."

She explains about rents, and then: " I know Mrs. M. L. Rice. She lived with me at store before I built brick house, and at brick house after I built it. I never at any time told her what I built the brick house for. * * * In 1887 and 1888 I offered the brick house for sale, and would have sold it if I could have done so at a good profit. * * * I suppose I will continue in business till I die. I intend to live in the little green house when it suits me."

There was other testimony tending to establish the homestead of Mrs. Deal at the brick house, but it will be unnecessary to notice it. Taking her own testimony, and that alone, the conclusion can not be avoided that

the "green house" was abandoned as a homestead, and was therefore subject to partition between the heirs of B. F. Deal's estate.

Under some circumstances, one may have a homestead and yet not reside upon it; or there might be a homestead in one place and, for some sufficient reason, a temporary residence in another; but it is certainly true that the place of residence is the homestead, unless there be such sufficient reason.    Philleo v. Smalley, 23 Texas, 503.

It was said in Woolfolk v. Ricketts (48 Texas, 37), that "when the family have distinctly and unequivocally removed from one home or 'mansion house' and its adjoining land, and taken up their permanent abode and place of residence in another house, upon a different place, and where there is nothing connected with such removal and residence indicating that it is not intended to be permanent, certainly the presumption arises, if indeed the absolute conclusion is not warranted, in support of the title of one who has purchased it in good faith from the husband, that the place from which the family have gone is abandoned as their homestead."

"There can be but one homestead at any particular time," and "the most satisfactory evidence of the abandonment of a place once a homestead is the acquisition of another."    Slavin v. Wheeler, 61 Texas, 659.

The evidence in this case shows, that Mrs. Deal selected the brick house as the more suitable place for her residence; it was near her business, and she would find less exposure in going from it to the place at night, and would have more protection there than at the place from which she had removed.    It is evident, too, that she intended and still intends to make the brick house her permanent home while she owns it.    The meaning of her testimony is, that she intends to live upon the new home as long as she continues in the millinery business, and that she expects to continue in that business as long as she lives—if she does not sell the new home. She expresses her intention in this way:    "I thought if I ever quit the millinery business and sold the place where I now live, the brick house, I would move back to the little green house."    Connect this with her intention to continue in the millinery business while she lives, and we have all the insignia of a permanent homestead in the brick house.    Necessarily the green house was abandoned as a homestead.  Stewart v. Mackey, 16 Texas, 56; Rousel v. Stanger, 73 Texas, 673.

Another assignment of error insists, that the verdict is excessive in finding that defendant paid out of her separate estate $1187.86 in discharge of the encumbrance on the old homestead.

The evidence in fact does not show that such amount was paid out of her separate estate; but her rights do not depend upon the amount that was paid out of her separate estate alone.    Her rights would be the same whether the payments were made out of her separate property or the community of herself and her husband, because there being no children of

the marriage, she inherited all the community and all rights growing out of the community. Whatever of the community went to pay for the improvements, and to pay the encumbrances upon the lots, which were the husband's separate property, would be a charge upon such separate estate on settlement between the heirs.

Such improvements and payments are required to be accounted for as community, and the community would be entitled to be reimbursed to that extent. Rice v. Rice, 21 Texas, 58; Cameron v. Fay, 55 Texas, 61; Day v. Stone, 59 Texas, 615; Furrh v. Winston, 66 Texas, 525; Clift v. Clift, 72 Texas, 149.

Other assignments of error complain of the refusal of the court to give special charges requested by plaintiff, seven in number, and are in the same form, viz.: " The court erred in refusing special charge No. 1 asked by plaintiff."

These assignments are too general; they point out no error, but leave it to the court to ascertain what the error is and to specify it. They can not be considered. Rev. Stats., art. 1037; Rules Cts. of Civ. App., 24, 25, 26.

Because the verdict of the jury was not supported by the evidence, as herein indicated, the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*

Delivered May 3, 1893.