**BISHOP et ux. v. WILLIAMS et al.**
(No. 6127.)

(Court of Civil Appeals of Texas. Austin. Jan. 15, 1920. On Appellees' Motion for Rehearing, April 1, 1920. Dissenting Opinion, April 8, 1920. On Appellants' Motion for Rehearing, June 29, 1920.)

On Appellees' Motion for Rehearing.

**1. Husband and wife ⬅249—Land conveyed to husband held his separate property.**

Where a part of the consideration for mother's deed to married son was services rendered mother by son prior to his marriage, pursuant to mother's contract to convey the land in consideration for such services, the land was son's separate property, though community funds may subsequently have been used to pay for it.

**2. Homestead ⬅81—May be of separate as well as community property.**

A homestead right attaches to separate as well as community property.

**3. Homestead ⬅124—Husband's deed to separate property constituting homestead becomes operative on abandonment.**

Husband's deed to his separate property, constituting the homestead, without wife's signature, is inoperative as long as the property remains the homestead, but on subsequent abandonment of the homestead the deed becomes operative, and vests title in grantee.

**4. Homestead ⬅154—Husband may abandon homestead rights on either separate or community property.**

The husband, as head of the family, has the right to abandon homestead rights on either separate or community property, while acting in good faith.

**5. Homestead ⬅164—Rule as to abandonment stated.**

When wife voluntarily leaves homestead, and goes with husband elsewhere, and the husband believing that he is doing what is best for himself and family, without any intention to defraud his wife, forms the intention in his own mind never to return and use the property as a homestead, the property ceases to be a homestead as soon as such removal and intention concur, though no other homestead has been acquired.

**6. Homestead ⬅161—Husband may abandon homestead in good faith without wife's consent.**

Husband's right to abandon homestead without wife's consent, when in so doing he acts in good faith, is not dependent on wife voluntarily leaving the property and ceasing to use it as her home.

**7. Deeds ⬅190—Want of consideration must be pleaded.**

In action to recover land conveyed to plaintiff by defendant, the defense that the deed was without any consideration, to be available, must have been pleaded.

**8. Deeds ⬅15—Deed between parent and child need not be based on valuable consideration.**

A deed from parent to child, or from child to parent, need not be supported by a valuable consideration.

**9. Husband and wife ⬅6(2)—Husband could convey separate property by deed of gift.**

Husband could convey his separate property by deed of gift, if conveyance did not impair homestead rights or rights of creditors.

**10. Adverse possession ⬅14—No title to land by limitations without possession, except through a tenant.**

Plaintiff could not acquire by limitations title to land of which she had never been in possession, unless person in possession had possession as her tenant.

**11. Homestead ⬅181(3)—Evidence held to show abandonment.**

In action to recover land conveyed to plaintiff by defendant, where defense was that the deed was void as a conveyance of a homestead without wife joining therein, evidence held to warrant finding that removal of defendant and his family from the property was with the intention on defendant's part never to return and use it again as a homestead, and that in so removing with such intention he was not actuated by any desire or purpose to defraud his wife concerning homestead rights.

**12. Homestead ⬅162(1)—Husband may abandon homestead in his separate property.**

Husband could abandon homestead rights in his separate property by removal, without wife having notice of his intention to so do.

**13. Homestead ⬅163—May be abandoned without ceasing to use land.**

Cultivation of land does not disprove previous abandonment of the land as a homestead, and owner may, without intending to make it his home again, cultivate, rent, or otherwise utilize the property after removal; abandon-

ment of homestead not signifying abandonment of claim to ownership.

**14. Homestead ⬥181(3)—Husband's conveyance without consideration does not show that abandonment was in fraud of wife.**

That husband, after abandonment of homestead, deeded it to his mother without any pecuniary consideration, does not necessarily show that his prior abandonment of the property was for the purpose of defrauding his wife.

*On Appellants' Motion for Rehearing.*

**15. Frauds, statute of ⬥128—Deed executed pursuant to parol contract not void.**

That contract to convey was in parol did not render deed executed pursuant thereto invalid under the statute of frauds; the parol contract not being void, but merely unenforceable, and vendor having waived benefit of the statute by complying with the contract and executing the deed.

**16. Appeal and error ⬥854(1) — Judgment should be upheld, if it can be sustained on any issue.**

Where the judgment of the trial court may be sustained on any issue raised by the pleadings and the evidence, it should be upheld by the appellate court.

Jenkins, J., dissenting.

Appeal from District Court, Coleman County; J. O. Woodward, Judge.

Suit by Mrs. Mary C. Williams and others against Berry Bishop and wife. Judgment for plaintiffs, and defendants appeal. Affirmed.

W. Marcus Weatherred, of Coleman, for appellants.

Critz & Woodward, of Coleman, for appellees.

### Findings of Fact.

JENKINS, J. This suit was brought by Mary C. Williams and her children by her second marriage, against Berry Bishop, her son by a former marriage, and his wife, Meppie Bishop, to recover 80 acres of land.

Mrs. Williams bought 275 acres of land soon after the death of her second husband, paying therefor $2,000, the community property of herself and her second husband, and executing her three promissory vendor's lien notes, for $250 each, payable in one, two, and three years, respectively, after December 11, 1901.

Berry Bishop was not married at that time, and was not living with his mother, but at her request he came home, under an agreement with her that he would work the farm on the 275-acre tract, support her and her family, and pay the notes as they fell due, in consideration of which she agreed to deed him the 80 acres of land in controversy, which adjoined the 275-acre tract. It does not appear how she obtained this 80-acre

tract. This agreement was complied with by Bishop, and on December 11, 1903, Mrs. Williams executed a deed to him for the land in controversy, reciting the fulfillment by Bishop of the contract above referred to.

Bishop married his coappellant May 24, 1903, and they occupied the land in controversy as their homestead until the fall of 1917, at which time they moved to the town of Coleman, Bishop obtaining work as a section hand, and they lived in a rented house to the time of the trial hereof.

On November 5, 1904, Bishop executed a deed to his mother for the land in controversy, reciting as a consideration her promissory vendor's lien note for $700. In fact, no such note was given, nor intended to be given. No consideration was paid, nor promised, for the execution of such deed. At the time of the execution of such deed, Bishop promised his mother to pay her, annually, the usual crop rents on this land, and he did so to the time of the trial. Mrs. Bishop did not join in the execution of this deed, and it is not made to appear that she knew of same, or of the agreement to pay rent, or of the payment thereof.

Bishop's explanation as to why he executed this deed to his mother is that her other children were complaining to his mother about her having deeded this land to him, and that he executed the deed to prevent her being annoyed, and that he agreed to pay her rent as a contribution to her support. This explanation was not denied by Mrs. Williams.

On August 9, 1918, Bishop executed a deed to the land in controversy to his mother. Mrs. Bishop refused to join in this deed.

The case was tried by the court without a jury, and judgment was rendered for appellees.

Such other facts as are material will be stated in our opinion herein.

### Opinion.

The trial court did not file its findings of fact or conclusions of law, and hence we do not know upon what theory the judgment was rendered. Under the pleadings and the evidence, it could have been rendered only upon the plea of limitation by appellees, or upon the theory that the homestead had been abandoned when the deed of August 9, 1918, was executed.

The plea of limitation finds no support in the evidence. Mrs. Williams was never in possession of the land, unless she held same through Berry Bishop as her tenant. The deed to her of November 5, 1904, was void, for the reason that the land was then the homestead of Bishop and wife, and the wife did not join in the execution of the same. A husband cannot change the homestead character of land, upon which he and his wife continue to reside, by attorning to one

who has no title to same. Dykes v. O'Conner, 83 Tex. 161, 18 S. W. 490; Dotson v. Barnett, 41 S. W. 100; Williams v. Galveston, 58 S. W. 552; Lumpkin v. Woods, 135 S. W. 1141.

If the land had not been abandoned as a homestead by appellants at the time of the execution of the deed of August 9, 1918, it of course conveyed no title to Mrs. Williams. Abandonment of a homestead consists in removal from the same, combined with the intention not to again return and occupy it. Mr. Woodward, who drew the deed last above referred to, testified that Bishop, at that time, told him that when he left the place he never intended to go back to it, and had abandoned it as his homestead. This, though denied by Bishop, must be, for the purposes of this appeal, taken as true.

Proof of an intention to abandon a homestead must be clear and conclusive. Gouhenant v. Cockrell, 20 Tex. 98; Cross v. Everts, 28 Tex. 534; Wynne v. Hudson, 66 Tex. 9, 17 S. W. 110; Ayers v. Shackey, 2 Posey, Unrep. Cas. 275.

A husband cannot deprive a wife of her homestead by abandoning the same, where such abandonment is not in good faith and is in fraud of the rights of the wife. Smith v. Uzzell, 56 Tex. 318; Gray v. Fussell, 48 Tex. Civ. App. 261, 106 S. W. 455; Brewery Association v. Walker, 23 Tex. Civ. App. 6, 54 S. W. 361; Myers v. Evans, 81 Tex. 319, 16 S. W. 1061; Huss v. Wells, 17 Tex. Civ. App. 195, 44 S. W. 34–35; Medlenka v. Downing, 59 Tex. 40. In Smith v. Uzzell, supra, as quoted with approval in Hudgins v. Thompson, 211 S. W. 587, the court said:

"If, however, the husband, in fraud of the rights of the wife, and without her consent, should seek by an abandonment to withdraw the homestead from the pale of its exemption given for the benefit of the family, he could have no power to do so."

We are of the opinion that the evidence is insufficient to support a finding, if any was made, that Bishop abandoned his home in good faith, and without the intent to defraud his wife of her right to her homestead. The evidence upon which we base this conclusion is: (1) If Bishop had any intention to abandon his homestead, it does not appear that he made such fact known to his wife, who had no such intention. (2) The circumstances under which they left their home did not put her upon notice of such intention. (3) Bishop left home for the purpose of employment, rendered necessary by the drouth, in order to support his family. (4) Mrs. Bishop moved with her husband to the town of Coleman, in order to school her children and to be with her husband. (5) They moved into a rented house, and never acquired or attempted to acquire any other homestead. (6) Bishop attempted to cultivate the farm in 1918 (which was also a year of drouth in that country), by breaking all of the land, renting a part of it to tenants, and hiring a hand to cultivate a part of it. (7) He received no consideration for the deed to his mother. (8) Mrs. Williams is not shown to have taken possession of the land. (9) The deed to Mrs. Williams, if allowed to take effect, constitutes a gift of the community property of Bishop and his wife, which she was claiming as a homestead, she having done no act inconsistent with such claim.

Bad faith on the part of the husband was not an issue in Hudgins v. Thompson, supra. It does not appear that the wife objected to the contract to sell the homestead to Hudgins, but only that she was not consulted as to such transaction. It appears that she went with her husband, and willingly resided upon a rented place until another homestead was obtained, and that she joined, in statutory form, in a deed to the former homestead to another party. There is nothing in the case to show that Thompson did not in fact act for the best interest of his family, or that his wife ever doubted that he was doing so.

In Smith v. Uzzell, supra, the court said:

"In the absence of evidence to the contrary, it ought to be presumed, when a removal from a homestead is made, that it was made in good faith and with the consent of the wife."

For the reasons stated, judgment of the trial court is reversed, and this cause is remanded for a new trial.

Reversed and remanded.

## On Appellees' Motion for Rehearing.

KEY, C. J. When this case was decided by this court, the writer reluctantly assented to the judgment of reversal, although he had stated to his Associates in consultation that he was strongly inclined to the view that the judgment of the trial court should be affirmed, and that he did not indorse all that was said in the opinion filed by this court. After reconsideration, upon appellees' motion for rehearing, Mr. Justice BRADY and myself have reached the conclusion that this court has rendered an improper judgment, and that the motion for rehearing should be granted, and the judgment of the trial court affirmed.

The undisputed proof shows that by deed dated December 11, 1903, the plaintiff Mrs. Mary C. Williams conveyed the land in controversy to the defendant Berry Bishop; that deed shows upon its face that it was executed—

"for a consideration of services rendered to me and my minor children, and the assistance by said grantee herein, the said Berry Bishop, in paying out balance due on land purchased by me since the death of my husband, W. T. Williams, now deceased, and for the further consideration of the love and affection I have for my son, Berry Bishop."

The proof shows that Mrs. Williams' husband died in 1901, leaving his wife and sev-

eral minor children surviving him. Berry Bishop is a son of Mrs. Williams by a former husband, and was 21 years of age when his stepfather, Mr. Williams, died. On January 4, 1902, Mrs. Williams purchased a tract of land, containing about 275 acres, and in part payment therefor executed three notes, for $250 each, dated December 11, 1901, and due one, two, and three years from date. That tract of land adjoins the 80 acres of land in controversy in this suit. Mrs. Williams testified as follows:

"Berry stayed at home with me after his papa died, and worked on the place and helped me make a crop, and he lived with me in the house and made the crops until he married, and about two months after he married. He married May 24, 1903. It is a fact that Berry helped me pay the outstanding indebtedness on that place, $750. The only way I had was to pay out of the crops on the place, and he made part of them, not all. Jeff Minor worked it one year. The first year after Mr. Williams died, we worked the place ourselves; none was rented. Berry worked it with the help of Boley. Boley was about 12 years old. There was about 135 acres in cultivation then, something over 100. It is a fact that I told Berry that, if he would live on the place there with me and help me pay for it, I would convey him this 80 acres, and I did convey him the 80 acres, by reason of the fact that he had helped me pay these notes. I had no other source of income at all, no other property than what I have mentioned, and when I state in the deed that I conveyed it to him for the consideration for work done and love and affection, that is carrying out my agreement with him that I would let him have the 80 acres for helping pay the notes, and those notes were the three $250 notes that I assumed the payment of to Mr. Yarbrough, and finally those notes got in the hands of Brown Bros."

That testimony, together with other corroborative evidence, justified the trial court in finding that Mrs. Williams and her son Berry Bishop entered into a contract, after the death of Mr. Williams, to the effect that, if Berry Bishop would remain on the farm and manage the same, and thereby aid Mrs. Williams in paying off the $750 indebtedness against the farm, she would for that reason, and on account of the fact that he was her son, donate and deed to him the land in controversy. It is true that, at the time Mrs. Williams conveyed the land to Berry Bishop, he was a married man, and had been such for about 7 months, and it is also true that only a part, and not all, of the $750 owing on the land had been paid at the time she deeded the 80 acres to her son. But the testimony warranted a finding by the trial court to the effect that, at the time Mrs. Williams executed that deed, Berry Bishop had rendered valuable assistance to his mother, the grantor in the deed, in managing the farm, and thereby enabling her to pay off a portion of the indebtedness against it, and that the most of such service was rendered prior to his mar-

riage, on the 24th day of May, 1903. In fact, it is admitted on page 9 of appellants' brief that, before Mrs. Williams purchased the 275 acres of land, she entered into a contract with Berry Bishop to convey him the 80 acres of land in controversy, in consideration of his assisting her in paying for said lands, and that he did so assist her. Therefore the proof shows that the title which Berry Bishop obtained by the deed from his mother to him had its inception in a contract between them, which was made about 2 years before his marriage, and part of the pecuniary consideration for the conveyance had been received by Mrs. Williams before the marriage of Berry Bishop, which seems to bring the case within the purview of Stiles v. Hawkins, 207 S. W. 89, where it was held by the Supreme Court that, where settlers on public land, who had had the same surveyed, but had not made the cash payments required by law, assigned their interest to an unmarried man, who after his marriage made the cash payments to the state, and received a patent for the land, the land became his separate property, subject to the right of the community for reimbursement for community funds used in completing the payments. See, also, to the same effect, Welder v. Lambert, 91 Tex. 510, 44 S. W. 281, and Creamer v. Briscoe, 101 Tex. 493, 109 S. W. 911, 17 L. R. A. (N. S.) 154, 130 Am. St. Rep. 869.

[1] In view of these facts, and the recital in the deed that it was executed "for the further consideration of the love and affection I have for my son, Berry Bishop," we are of the opinion that it was the intention of Mrs. Williams to convey the land to her son in his own separate right, and that it was not community property between himself and wife. It is quite clear that the entire consideration for the deed was not community funds, and that a considerable portion of it was received by Mrs. Williams before the marriage of Berry Bishop; and therefore, and as Berry Bishop's title had its origin in the contract made while he was a single man, when his mother deeded the land to him, it became his separate property, even though community funds may have subsequently been used in paying for it.

[2, 3] But, inasmuch as a homestead right attaches to separate as well as community property, if it be conceded that the property in question was the homestead of himself and wife when he undertook to deed it back to his mother, as his wife did not join in either of the deeds referred to, such attempts to convey were inoperative as long as the property remained homestead. However, and conceding that, at the time Bishop executed the first deed purporting to convey the property back to Mrs. Williams, it was the homestead of himself and wife, nevertheless, if thereafter, and by reason of abandonment, it ceased to be homestead, the deed referred to

became operative, and reinvested title in her. Marler v. Handy, 88 Tex. 428, 31 S. W. 636; Stallings v. Hullum, 89 Tex. 431, 35 S. W. 2; Anderson v. Carter, 29 Tex. Civ. App. 240, 69 S. W. 78.

[4, 5] As we view it, decisions by our Supreme Court have settled the law of this case as follows: The husband, as head of the family, has the right, while acting in good faith, to abandon homestead rights upon either separate or community property, and when the wife voluntarily leaves such property, and goes with her husband elsewhere, and the husband, believing that he is doing what is best for himself and family, without any intention to defraud his wife, forms the intention in his own mind never to return and use the property as a homestead, then, as soon as such removal and intention concur, the property ceases to be homestead, although no other homestead has been acquired.

[6] In fact, the right of the husband to abandon the homestead without the consent of the wife, when in so doing he acts in good faith, is not, it would seem, dependent upon the fact that the wife has also voluntarily left the property and ceased to use it as her home; but such is not the case in hand. Slavin v. Wheeler, 61 Tex. 659. In the case cited, our Supreme Court, speaking through Mr. Justice Stayton, said:

"The Constitution protects to the wife the home of the family, and an attempt of the husband fraudulently to abandon it, prompted by malice or desire to deprive the wife of a home, would prove futile. There is nothing in this case to indicate any such disposition; were there, her right to protect herself in a home in such case has been recognized by this court in many cases. There cannot be one homestead for the wife and another for the husband, for the law protects but one to the entire family. No good reason can be given why, in the absence of some wrong by the husband, the determination of where the home shall be shall be left to the wife. We may say of the wife, as was said by Field, Chief Justice, in Guiod v. Guiod, 14 Cal. 507: 'She is bound by her marital obligations to live with him, and when he changes his place of residence she must accompany him. There is no obligation resting upon him to permanently occupy the same place; indeed, the highest interests of himself and family, their health and maintenance, and the proper education of his children, may require a relinquishment of the homestead.' "

But, as said above, this case does not belong in that class, because the undisputed proof shows clearly that Mrs. Bishop voluntarily left the property in controversy, and had resided elsewhere up to the time this case was tried.

Hudgins v. Thompson, 211 S. W. 586, is the latest decision by our Supreme Court upon the question of homestead abandonment, and in that case Mr. Justice Greenwood, speaking for the court, said:

"The trial judge rendered judgment against plaintiff in error on two conclusions: First, that the 40 acres continued to be the homestead of Horace Thompson and Mattie Thompson until they conveyed same to Frank Thompson; and, second, that the failure to show that the improvements made by Hudgins exceeded the rental value of the 40 acres after he took possession thereof defeated any right in Hudgins to specific performance of the contract of sale of the land. The Court of Civil Appeals affirmed the judgment of the court below upon the ground that the wife's consent is just as essential to the abandonment as it is to the alienation of the homestead, and section A of the Commission of Appeals has recommended that the judgment of the trial court be affirmed, upon the ground that the husband cannot lawfully abandon the homestead, without the wife's consent, unless another homestead be acquired.

"In our opinion, the facts are conclusive that Horace Thompson abandoned the 40 acres prior to the conveyance to Frank Thompson, and that thereupon Lon Hudgins became invested with the right to compel specific performance of the contract of sale to him, and that the claim of Frank Thompson is subject to such right. The conduct of Horace Thompson in entering into the contract of sale of the 40 acres, in accepting and retaining part of the purchase price therefor, in surrendering possession to Lon Hudgins, in conveying the land to Frank Thompson, and in establishing and maintaining the family residence elsewhere, is inconsistent with any other intention than not to use the 40 acres as a home, after the date of the contract of sale. Had Horace Thompson and wife conveyed the 40 acres to Lon Hudgins, no one would question Horace Thompson's intention from the date of the contract of sale. With respect to such intention, the deed to Frank Thompson indicates nothing variant from a deed to Lon Hudgins.

"It is only the homestead which the husband is forbidden to sell by section 50 of article 16 of the Constitution without consent of the wife. Having once been used for the purposes of a home, the 40 acres retained its homestead character until lost by abandonment. Judge Stayton admirably condenses the law of homestead abandonment when he says: 'Abandonment of property actually homestead cannot be accomplished by mere intention; there must be a discontinuance of the use coupled with an intention not again to use as a home to constitute abandonment.' Archibald v. Jacobs, 69 Tex. 251, 6 S. W. 178.

"When neither use nor intention to use as a home exists, nothing is left which can reasonably or justly be held to satisfy the Constitution's definition of a 'homestead.' After the removal from the 40 acres by Horace Thompson and his family, the application thereto of the homestead exemption was entirely dependent on the intention with which the removal was effected. Tackaberry v. Bank, 85 Tex. 493, 22 S. W. 151, 299. The evidence being conclusive that Horace Thompson's intention was clearly not to again use the 40 acres for home purposes, the essential intention to sustain the exemption was lacking, unless it be true that the head of the family cannot di-

vest property of its homestead exemption by bona fide abandonment.

"The opinion, in Smith v. Uzzell, 56 Tex. 318, 319, distinctly defines the power of the husband to bind the wife, with respect to abandonment of the homestead, in stating: 'If, however, the husband, in fraud of the right of the wife and without her consent, should seek by an abandonment to withdraw the homestead from the pale of its exemption given for the benefit of the family, he could have no power to do so; but while he acts in good faith and not against the will of the wife, having alone in view the good of the family, of which by nature and by law he is the recognized head, his power to abandon a homestead ought not to be questioned; and, in the absence of evidence to the contrary, it ought to be presumed, when a removal from a homestead is made, that it was made in good faith and with the consent of the wife.'

"The restraint on alienation by the married man owner is the same with respect to the business homestead as it is with respect to the residence homestead. Inge v. Cain, 65 Tex. 81, decided that 'the husband, without the concurrence of the wife, may divest his place of business of the homestead protection by abandonment, and then himself convey it.'

"There is no difference between the power of the husband to abandon a part and his power to abandon all of the homestead. That he alone may in good faith abandon part or all was explicitly declared in Wynne v. Hudson, 66 Tex. 9, 17 S. W. 113, in these words: 'To our minds it is too clear that, as to Thomas Hudson, a part, if not all, the property in controversy has lost its homestead character; for it has been rented, not temporarily, but rented, and intended to be rented, permanently, while tenants can be found to occupy it. Counsel for appellees seem to recognize that this is the true posture of the case as to Thomas Hudson; but the claim is that, as the homestead cannot be sold without the consent of the wife, given in the manner prescribed by law, therefore the husband has no power to do any act whereby a part of the homestead will cease to have that character. This, we think, is a mistake. The husband is the natural, as well as legal, head of the family, and it certainly is not true, when he once acquires a homestead more than sufficient for the ordinary purposes of a home and place of business, that he is tied to it for life, unless his wife may consent that a part of it may be used for some other purpose. Nor is it true, if, in good faith, and as he deems best for them who are dependent upon him, he removes from a homestead, with intent never to return to it again, that the homestead character will adhere to the abandoned home until the wife consents that it may cease. What constitutes an abandonment, as matter of law, is easily determined; but its application to particular cases is often difficult. The facts which evidence it must be clear.' To the same effect are Slavin v. Wheeler, 61 Tex. 659, and Rockwell Bros. & Co. v. Hudgens, 57 Tex. Civ. App. 504, 123 S. W. 186.

"The above cases announce the doctrine which generally prevails. A number of cases from other states are cited in the note to

Stewart v. Pritchard (101 Ark. 101, 141 S. W. 505) 37 L. R. A. (N. S.) 807, where it is said: 'Although there is some conflict as to the husband's right to abandon the homestead without the consent of the wife, it is generally held that he has such power, and that he may then make a valid conveyance by his sole deed if he acts in good faith.' This court has steadily refused to hold that the acquisition of a new homestead is a condition precedent to the exercise of the power or right of abandonment of the old homestead.

"Chief Justice Hemphill pointed out, in Gouhenant v. Cockrell, 20 Tex. 97, that the substance of the holding in a previous opinion by himself in Shepherd v. Cassiday, 20 Tex. 24, 70 Am. Dec. 372, was: 'That the right to an old homestead might be forfeited although a new one had not been acquired, where it had been abandoned with an intention not to return, and this intention was not changed before some opposing right had been legally vested by sale in a third person.' At the same time, Chief Justice Hemphill declared that the best evidence of homestead abandonment was that a new and permanent home had been acquired, and, in the absence of a new and permanent home, the old ought not to be held subject to the claims of creditors, unless the proof of 'total abandonment with an intention not to return' be undeniably clear and beyond almost the shadow, at least all reasonable ground, of dispute.'

"The single question presented by Woolfolk v. Rickets, 41 Tex. 362, was whether a charge was correct to the effect 'that a homestead is not lost by abandonment until another has been acquired.' The charge was held erroneous under the decisions in Gouhenant v. Cockrell and Shepherd v. Cassiday, and the opinion of Associate Justice Reeves, after citing those decisions, thus concludes: 'The leading proposition of the charge is that a new homestead must be acquired before the old one can be lost by abandonment, when, as has been shown, voluntary abandonment, with a fixed intention not to return, though a new homestead may not be acquired, will open the property to creditors, and we think, under like circumstances, the property would be open to purchasers also.'

"Scott v. Dyer, 60 Tex. 139, again declared that, before acquisition of a new homestead, the old would be considered abandoned on clear and conclusive proof that its use had been discontinued, with the intent not to return. In Reece v. Renfro, 68 Tex. 194, 4 S. W. 546, the court, per Chief Justice Willie, said: 'It has been frequently held by this court that the homestead right may be lost by abandonment, and that to constitute abandonment it is not necessary that another homestead shall have been acquired. Jordan v. Godman, 19 Tex. 273; Smith v. Uzzell, 56 Tex. 315; Woolfolk v. Ricketts, 48 Tex. 28.'"

With the foregoing observations, reference to and quotations from authorities, we now turn to appellants' brief, and the reasons therein assigned for asking a reversal of the judgment of the trial court, which awarded the land in controversy to the plaintiffs.

The first assignment in appellants' brief

charges that the judgment of the court below is contrary to the law and the evidence, because the land in controversy was the homestead of the defendants at the time of the execution of the deeds under which the plaintiffs claim, which deeds were not signed by Mrs. Bishop, wife of the defendant Berry Bishop. Under that assignment but one proposition is submitted, which is that conveyance of a homestead by the husband without joinder of the wife is absolutely void. That proposition is unsound, as shown by authorities already referred to, holding that such deed is not absolutely void, and may become operative after the property has ceased to be homestead by abandonment.

The second assignment asserts that the court erred in rendering judgment for the plaintiffs, because the evidence showed that the defendants owned and claimed the land in controversy as their homestead at the time of the execution of the deeds by Berry Bishop, and that Mrs. Bishop, his wife, at no time intended to abandon her homestead right. The first proposition under that assignment is identical with the proposition submitted under the first assignment, and is disposed of by what we have said in reference to that proposition. The second proposition submitted under that assignment is:

"Where another homestead has not been acquired, in order to show abandonment of the homestead, it is necessary to prove that the wife concurred in her husband's intention not to use the land again as a home."

That the wife's concurrence in the husband's intention to abandon the homestead is not essential to such abandonment is shown by the authorities heretofore cited. The third proposition under that assignment is that there can be no abandonment of the homestead in which the wife does not join. That proposition is substantially the same as the second proposition already considered.

The third and fourth assignments of error present substantially the same questions as presented by preceding assignments, and require no further consideration.

[7-9] The fifth assignment of error charges that the judgment is contrary to the law and evidence, because the deeds under which plaintiffs claim the land in controversy were executed by defendant Berry Bishop without any consideration therefor, and are therefore void. More than one answer can be made to that assignment. In the first place, appellants filed no sworn answer, charging that the deeds were without consideration. In the next place, a deed from parent to child, or child to parent, need not be supported by a valuable consideration; also, the property in controversy being the separate property of Berry Bishop, he could convey it by deed of gift, as long as such conveyance did not impair homestead rights, or rights of creditors. Newton v. Newton, 77 Tex. 508, 14 S. W. 157;

Baker v. Westcott, 73 Tex. 129, 11 S. W. 157; Lott v. Kaiser, 61 Tex. 665; Newman v. Newman, 86 S. W. 635; Parker v. Stephens, 39 S. W. 164; Robinson v. Douthit, 64 Tex. 101.

The sixth and seventh assignments complain of the action of the trial court in permitting the plaintiffs to introduce in evidence the two deeds heretofore referred to, executed by Berry Bishop to the plaintiff Mrs. Williams, because same were executed without any consideration, and because, at the time they were executed, the property was the homestead of the defendants, and the wife did not join in executing the deeds. What has already been said disposes of those assignments adversely to appellants.

[10] Other assignments relate to the question of limitation and other questions having no reference to abandonment of homestead rights. The question of limitation is treated in the former opinion filed by this court, and we adhere to that ruling.

The other questions not discussed in the former opinion, nor in this opinion, have received due consideration, and are unanimously decided against appellants.

[11] The foregoing references to appellants' brief have been made for the purpose of showing that, in the opinion of the writer, the questions of Berry Bishop's intention to abandon homestead rights in the property and his good faith in doing so are not presented to this court for decision. Appellants' contention upon that subject, as disclosed by their brief, is that no abandonment of homestead was shown: (1) Because no other homestead had been acquired; and (2) because Mrs. Bishop did not consent to nor concur in her husband's intention to abandon the homestead. But, if it be conceded that the two questions referred to are presented to this court for decision, a majority of the court hold that the trial court had before it testimony sufficient to warrant a finding that, when Berry Bishop and his family removed from and left the property, such removal was with the intention upon his part never to return and use it again as a homestead, and that in so removing with such intention Berry Bishop was not actuated by any desire or purpose to defraud his wife concerning homestead rights, and some of that testimony will now be referred to.

The case was tried in November, 1918, and the undisputed proof shows that Berry Bishop and his family left the property and ceased to use it as a home about one year before that time, and had not returned to and resided upon it since they left it. They first went and lived a few months on another farm, and then moved to the town of Coleman, where they have resided ever since, and where the husband, Berry Bishop, paid his poll tax and voted, though the property here involved is not within the Coleman voting precinct.

The witness Woodward testified that Berry Bishop stated to him that when he left the place he intended to abandon it and never go back and use it as his homestead, and thereafter be executed a deed for the purpose of conveying it to his mother. Berry Bishop denied making such statement to Woodward, but it was the province of the trial court to pass upon the credibility of the two witnesses, and we must assume from the judgment rendered that the court accepted Woodward's testimony as true. Such being the case, and in view of the fact that Berry Bishop subsequently executed a deed for the purpose of conveying the property to his mother, and other testimony relating to that question, we hold that the trial court was justified in reaching the conclusion that his removal from the property was accompanied by the intention to abandon it as a homestead. Blackburn v. Knight, 81 Tex. 326, 16 S. W. 1075; Kutch v. Holly, 77 Tex. 220, 14 S. W. 32; Mathis v. Obertheir, 50 Tex. 326; Jones v. Robbins, 3 Tex. Civ. App. 200, 22 S. W. 69. And if such abandonment was in good faith, then the deed which Berry Bishop had formerly executed became operative, and reinvested in Mrs. Williams whatever title was vested in Berry Bishop by the deed which she had formerly executed to him.

Concerning the question of good or bad faith, in Smith v. Uzzell, 56 Tex. 315, the Supreme Court said:

"In the absence of evidence to the contrary, it ought to be presumed, when a removal from a homestead is made, that it was made in good faith, and with the consent of the wife."

In the instant case there is no testimony whatever tending to show that the wife objected and did not consent to the removal from the homestead, and there is no testimony that would warrant a finding that in making such removal, with the intention of abandoning the property as a homstead, Berry Bishop did not act in good faith, and did not do what he considered was for the best interest of himself and his family, unless it be the fact that long after such removal he executed a deed to his mother, for the purpose of conveying the property to her, without any pecuniary consideration. The record is barren of testimony tending to show that he was not a devoted husband and father, or that, at the time he left the property, he had any desire to deprive his wife and children of something which he knew they ought not to be deprived of. In the absence of testimony to the contrary, it is fair to assume that Berry Bishop loved his wife and children as much as husbands and fathers generally do. The property in question consists of only 80 acres, which is quite a small farm in that section of the state. The record indicates, and perhaps we should take judicial knowledge of the fact, that when Berry Bishop and his wife left the property a severe drouth was prevailing; similar drouths had prevailed in the past, and others would probably occur in the future. At that time Mr. Bishop was about 37 years of age, and it is fair to assume that his wife was not any older. They had a growing family of children, in the education and welfare of whom they were both interested.

In view of these facts, was it unreasonable or unjust if Mr. Bishop reached the conclusion that it would be for the best interest of the entire family to abandon the use of the property as a homestead, and either procure a larger farm, or engage in some other pursuit, in order to support his family and educate his children? Also it should be borne in mind that, while he received no pecuniary consideration for the execution of the two deeds which he made to his mother, he must have known that he obtained the property from her, and that part of the consideration which induced her to deed it to him was that love and affection which she, as his mother, felt towards him because of the fact that he was her child. In fact, he testified that he executed the first deed to his mother because some of his half-brothers were complaining because his mother had deeded the property to him. The testimony tends to show that Mr. Bishop, in executing that deed to his mother, was not actuated by any malevolent design towards his wife, but that his motive was to protect his mother from complaints of her other children. Of course, as the property was then homestead, such deed was ineffectual, because of the fact that Mrs. Bishop did not join in its execution; but, if the homestead was subsequently abandoned, then it became operative. Also it is conceded that, as the property was homestead at the time that deed was executed, Mr. Bishop's motive to aid and assist his mother, however worthy it may have been, could not change the fact that the property was homestead. In fact, Mr. Bishop's own testimony indicates that he was of the opinion that as the property was then homestead, and as his wife did not join in that deed, it was therefore absolutely void, and that the property remained his, just as it would have been if he had never executed that deed. He testified that he considered the property belonged to him after he had executed that deed, and that and other testimony justified the trial court in finding that he did not execute that deed for the purpose of impairing the homestead rights of himself and his wife. And the fact that he regarded that instrument as absolutely void tends strongly to show that he did not abandon the property for the purpose of rendering that deed effective, and thereby depriving his wife of her homestead right.

In fact, all the testimony bearing upon the question of abandonment tends to show that he removed from the property for other reasons, and that in so doing he was acting for

what he regarded as the best interest of himself and family. Hence it follows that, if the second deed was executed for the purpose of impairing the wife's homestead right, if he had no such intention when he abandoned the property with an intention never to return and use it as a home, the first deed from him to Mrs. Williams became operative and vested the title in her. And in view of all the facts and circumstances referred to we hold that the trial court had before it testimony which will support a finding in appellee's favor, upon the question of good or bad faith upon the part of Berry Bishop in abandoning homestead rights.

The opinion of this court, prepared by Mr. Justice JENKINS, assigns nine reasons for holding that the testimony will not support a finding that, if Bishop abandoned his homestead, he did so in good faith, and with no intent to defraud his wife of her homestead rights. Those reasons may be answered as follows:

1. Mrs. Bishop was a witness in the case, and did not testify that she was ignorant of her husband's intention to abandon the homestead, and there is no proof in the record concerning that question. According to the ruling made in Smith v. Uzzell, supra, if it was necessary that she should have known that fact, in the absence of proof to the contrary, it will be presumed that she did. However, it is immaterial whether she knew it or not. If Bishop, when the family removed from the homestead, doing what he considered was for the best interest of his family, determined never to return and use it as a home, it was thereby abandoned as a homestead, although his wife, if knowing his intention, may have protested against such abandonment.

[12] 2. It was not necessary for Mrs. Bishop to have any notice of her husband's intention to abandon the homestead.

3. Although Bishop may have left his home for the purpose of employment, rendered necessary by the drouth, and in order to support his family, he may have done so with the intention of never using the property again as a home. In fact, the conditions referred to may have constituted his reason for abandoning the homestead.

4. And the same may be said with reference to the fact that they went to the town of Coleman, in order to send their children to school.

5. The husband could abandon the homestead without the acquisition of another homestead.

[13] 6. Abandonment of homestead rights does not signify that the owner of the property has abandoned his claim of ownership; and therefore, without making it his home again, the husband may cultivate, rent, or otherwise utilize the property, and Bishop did no more than that after removal from the property.

[14] 7. As the property belonged to him in his separate right, if he removed from it under such circumstances and with such intention as constituted abandonment, it was immaterial that he made a deed of gift to his mother. In other words, the fact that he subsequently deeded it to his mother without any pecuniary consideration does not necessarily show that his prior abandonment of the property was for the purpose of defrauding his wife; and, as heretofore pointed out, there is testimony in the record which will support a finding that such was not his intention.

8. It was not necessary to prove that Mrs. Williams had taken possession of the land in order to show good faith abandonment by Bishop.

9. In our judgment, the property did not belong to the community estate, and therefore giving effect to the deed in question would not constitute a gift of community property.

For the reasons stated, appellees' motion for rehearing is granted, and judgment of the trial court is affirmed.

Motion granted.

JENKINS, J. (dissenting on motion for rehearing). My Associates have concluded that we erred in reversing and remanding this case. Not being able to agree with them, I deem it proper, on account of the importance of the issues involved, to state the grounds of my dissent.

The majority opinion is based, in part, upon the theory that title to the land in controversy had its inception when Berry Bishop was a single man, and was therefore his separate property. This conclusion is based upon the fact that Bishop made a contract with his mother to purchase the land from her before his marriage, and the recital in the deed of love and affection.

The deed having been made after Berry Bishop's marriage, the burden was on appellee to show such facts as would amount in law to an inception of Bishop's title prior to his marriage. The evidence indicates that the contract referred to was oral, with nothing to take it out of the statute of frauds. There being no evidence to the contrary, it will be presumed that such was the fact. I do not believe that a contract, invalid under the statute of frauds, is the inception of title. I do not think that Stiles v. Hawkins, 207 S. W. 89, and the cases there cited, are authority for the contrary view, for the reason that in these cases what was held to be the inception of title were written instruments, namely, colonial contracts and acts of Legislatures.

In support of my view upon this point, I cite Akin v. Jefferson, 65 Tex. 145; Buford v. Bostick. 58 Tex. 70; Votaw v. Pettigrew, 15 Tex. Civ. App. 87, 38 S. W. 215; Bishop v. Lusk, 8 Tex. Civ. App. 30, 27 S. W. 306.

Title or claim to land means some legal or equitable right, which will ripen into a perfect title, upon the owner of such title complying with his contract in reference thereto, and not a mere moral obligation upon the part of some one to make him a conveyance of the land. Sauvage v. Wauhop, 143 S. W. 262, 264; Gameson v. Gameson, 162 S. W. 1169. Upon compliance by Berry Bishop with his oral contract with his mother, he could not have recovered the land from her. He would have had no title which the law would have recognized. The mere payment of the purchase money does not take a case out of the statute. Bishop did nothing which gave him any legal or equitable title to the land until after his marriage, at which time he moved onto the land, finished paying for it, and obtained a deed therefor.

The recital in the deed, "for the further consideration of love and affection," etc., is entitled to no consideration. The evidence shows that Bishop paid the contract price for the land, which presumably was its full value. There is nothing in the record to indicate that Mrs. Williams was influenced, either in the original agreement or in the execution of the deed, by her love for Berry Bishop. On the contrary, she testified:

"When I state in the deed that I conveyed it to him for the consideration of work done and love and affection, that is carrying out my agreement with him that I would let him have the 80 acres for helping me pay the notes."

He paid them in full, supported his mother and family while he was doing so, and turned over to her, when his contract was completed, the teams and tools on hand and $200 in money. If the land was community property, the gift of the same to his mother, it not being made to appear that there was any other community estate out of which to compensate his wife for her interest therein, or out of which the family could receive support, was a fraud on the community estate of the wife. Smitheal v. Smith, 10 Tex. Civ. App. 446, 31 S. W. 422; Cetti v. Dunmon, 26 Tex. Civ. App. 433, 64 S. W. 789; Watson v. Harris, 61 Tex. Civ. App. 263, 130 S. W. 241.

The majority opinion herein holds that, though the land was the homestead of Bishop and wife when the first deed was executed, "nevertheless, if thereafter and by reason of abandonment it ceased to be homestead, the deed referred to (the first deed) became operative and reinvested title in her (Mrs. Williams). Marler v. Handy, 88 Tex. 428, 31 S. W. 636; Stallings v. Hullum, 89 Tex. 431, 35 S. W. 2; Anderson v. Carter, 69 S. W. 78."

I do not so understand the law. Nor do I think that the authorities cited support the proposition that, upon the abandonment of the homestead, the deed became effective "as a conveyance" to invest the grantee with title. Such a deed is void, and can never become effective to invest the grantee with any title to the land. It is true that in Anderson v. Carter, supra, the effect of abandonment is referred to as making the deed "operate as a conveyance." But under the facts of that case this language meant no more than that appellant could not recover the land after its abandonment as a homestead, for the reason he was estopped by his warranty deed, and by the further fact that he had subsequently acquired another homestead. His wife was not a party to the suit. In addition to this, he never had any homestead right in the land sued for. Hence it may be assumed that the court was not careful in the use of the language referred to.

In Marler v. Handy, supra, Mr. Justice Brown said that the deed to the homestead, executed by the husband alone, was not "void," but added that the property "could not be recovered by the husband, *because he would be estopped by the deed*" (italics mine), and it could not be recovered by the wife, because her homestead right ceased when her husband acquired, and she removed with him to, another homestead.

In Stallings v. Hullum, supra, the court, of which Judge Brown was a member, speaking through Chief Justice Gaines, explains that what was meant in Marler v. Handy was that "the deed was not so far void as to prevent it from operating by way of estoppel against the husband." A deed absolutely void may have this effect. In the case last cited, Judge Gaines cites the Constitution to show that the conveyance of the homestead by the husband alone is prohibited by law, and adds: "What is prohibited by law is as clearly invalid as if it had been declared void." 89 Tex. 434, 35 S. W. 3. "Void" and "invalid" are synonymous terms. That which is void can never become valid, and what is never valid is void. Inge v. Cain, 65 Tex. 79. Therefore the subsequent abandonment of the homestead cannot validate a deed to the same, which was void for want of the wife's signature when the same was executed.

It may be asked what is the difference between the husband being estopped by his deed and the deed operating as a conveyance of his title? The difference is very material as affecting the right of the wife. The deed being void, it conveys no estate in the land. As was said in Stalling v. Hullum, supra, 89 Tex. 435, 35 S. W. 4, it could not "in the slightest manner affect her rights." What are the rights of the wife to a homestead? Not the mere privilege of possession and enjoyment, but a vested estate in the land, which the husband cannot convey without her joining in the deed, even though it be his separate property. The estate in the homestead is not that of joint tenancy, but an estate in entirety, vested in two persons, the husband and wife, who are regarded in

law as one person, and, unless both have conveyed it, neither has conveyed it. Campbell v. Elliott, 52 Tex. 159; Stallings v. Hullum, supra. Such being the law, the wife can recover both the possession and title of the homestead against one claiming under a deed from the husband only. This was the exact point decided in Stallings v. Hullum, supra. In that case, the signature of the wife having been obtained by fraud, it stood as though she had not signed the deed. The trial court held that "the deed was void and inoperative as to the wife," but was valid as to the husband, and operated to transfer his one-half interest therein as soon as it should cease to be the homestead of the wife. The Supreme Court said, "We are of the opinion that the judgment is erroneous" (89 Tex. 433, 35 S. W. 3), and consequently reversed the judgment of the trial court and the Court of Civil Appeals, and rendered judgment in favor of Mrs. Stallings, as prayed for, which was to cancel the deed executed by her husband to their homestead.

If a husband should bring suit to recover a homestead, to which he had executed a deed without being joined therein by his wife, the defendant could read such deed in evidence, which, being sufficient on its face to convey the land, would be a complete defense, in the absence of evidence that the deed was void. He would not be permitted to prove that it was void for the reason that the land was his homestead at the time the conveyance was executed, because he would be estopped from doing so by his deed. But no such consequence would follow upon the offer of such proof by the wife, for one person cannot be estopped by the deed of another. May the suit of the wife for the recovery of a former homestead fail in any case where she did not join in the deed? Yes. If she has acquired another homestead. This upon the ground that her title is a homestead title, and, as she cannot have two homesteads at the same time, her title to the former homestead ceases when she acquires a new one.

What amounts to an abandonment of a homestead is a different question from the right of the wife to recover or retain a homestead, when a deed to the same was executed by the husband alone, before the abandonment of the same. Also a suit to enforce specific performance of a contract to convey the homestead, made by the husband alone, presents a different question from a sale of the homestead by the husband alone, for which reason the case of Hudgins v. Thompson, cited in the majority opinion, is not in point in the instant case, in so far as the effect of the first deed to Mrs. Williams is involved herein.

A contract by the husband to convey the homestead at a future time is not void, for the reason that, if the property is not the homestead at the time such contract is sought to be enforced, the fact that it was a homestead when the contract was made presents no obstacle to its enforcement. Brewer v. Wall, 23 Tex. 585, 76 Am. Dec. 76; Cross v. Everts, 28 Tex. 535; Wright v. Hays, 34 Tex. 261; Allison v. Shilling, 27 Tex. 454, 86 Am. Dec. 622. The distinction between a deed to the homestead, executed by the husband alone, which is void, and a contract to convey the homestead at some future time, executed by the husband alone, which is not void, is pointed out in Campbell v. Elliott, 52 Tex. 158.

As to whether the husband, when acting in good faith, can or cannot abandon the homestead without the consent of the wife was not a material issue in Hudgins v. Thompson, for the reason that it clearly appeared that a new homestead had been acquired, to which the wife had voluntarily removed, and was living thereon when the case was tried. In addition to this, she had abandoned the former homestead by executing a deed thereto to another party, in the manner provided by law.

I will now discuss the question of the abandonment of a homestead. What facts are sufficient to show such abandonment? What evidence is sufficient to sustain a finding that such facts exist?

I concede that a homestead may be abandoned before another is acquired. This would be the case where the husband abandoned the homestead with the consent of the wife. In Smith v. Uzzell, 56 Tex. 315, it is said that the husband may abandon the homestead, if "he acts in good faith *and not against the will of the wife.*" (Italics mine.) I will not dogmatically assert that no case could arise in which it would be held that the husband could not abandon the homestead against the will of the wife without acquiring a new homestead; but, if so, such a case would have to embrace facts peculiar to itself. So far as I am aware, it has never been so held in any case in this state. The contrary was held in Myers v. Evans, 81 Tex. 317, 16 S. W. 1060, and in Gibbons v. Hall, 59 S. W. 815. In each of these cases the intention of the husband to abandon the homestead was conclusively shown by his executing a deed to the same. In neither of these cases was any other homestead acquired, and the wife objected to the abandonment of the homestead. In each case the wife had left the homestead, and in the latter case willingly, but not with the intention to abandon the same.

The majority opinion cites in support of the conclusion therein reached that a husband, if he acts in good faith, may abandon the homestead without the consent of the wife, and against her will: Hudgins v. Thompson, 211 S. W. 586; Gouhenant v. Cockrell, 20 Tex. 97; Shepherd v. Cassiday, 20 Tex. 24, 70 Am. Dec. 372; Woolfolk v. Ricketts, 48 Tex. 28; Scott v. Dyer, 60 Tex.

139; Reece v. Renfro, 68 Tex. 194, 48 S. W. 546; Jordan v. Godman, 19 Tex. 273; Smith v. Uzzell, 56 Tex. 215; Slavin v. Wheeler, 61 Tex. 659; Inge v. Cain, 65 Tex. 81; Wynne v. Hudson, 66 Tex. 9, 17 S. W. 113; Rockwell v. Hudgens, 57 Tex. Civ. App. 504, 123 S. W. 186; Stewart v. Pritchard, 101 Ark. 101, 141 S. W. 505, 37 L. R. A. (N. S.) 807.

I have already sufficiently discussed Hudgins v. Thompson. As hereinbefore stated, no deed to the homestead was made in that case.

In Gouhenant v. Cockrell and in Shepherd v. Cassiday the issue of the wife's consent to the abandonment of a homestead was not involved. It is not made to appear that Gouhenant had a wife, nor that Mrs. Cassiday had a husband.

In Woolfolk v. Ricketts, Reece v. Renfro, and Slavin v. Wheeler a new homestead had been acquired.

In Smith v. Uzzell, supra, the court said:

"In the absence of evidence to the contrary, it ought to be presumed, when a removal from a homestead is made, that it was * * * with the consent of the wife."

This is a common-sense as well as a legal presumption, for, taking into consideration the relation between husband and wife, it ought not to be presumed that a matter so important to the family as the abandonment of the home was made against her will, and, if not in accordance with her judgment, that she yielded to what she considered the superior judgment of her husband in the matter.

A legal presumption, until met by some testimony tending to rebut the same, is of as much force as the uncontradicted positive testimony of an impartial witness. Applying this presumption, together with the facts and circumstances in evidence, it is made to appear that the wife did consent to the abandonment of the homestead in Scott v. Dyer, Jordan v. Godman, Smith v. Uzzell, Inge v. Cain, Wynne v. Hudson, and Rockwell v. Hudgens, supra.

While it does not appear that anything was done in Inge v. Cain, supra, contrary to the wishes of the wife, that case presents a different phase as to abandonment. There the land in controversy was a business homestead. A business homestead is such only while used by the head of the family as a place of business. A wife could not compel her husband to continue his business. When he abandons the business, the place automatically ceases to be a business homestead. The restraint upon alienation is the same as to a business and a residence homestead; that is, the wife must join in the conveyance. What amounts to abandonment is different. The wife's wishes as to the abandonment of a business homestead are immaterial.

Thus it will be seen that, whatever dicta may be found in these cases, as to the authority which a husband might be held to have to abandon the homestead, under a possible state of facts, against the will of the wife, and without obtaining another homestead, neither of the cases cited in the majority opinion is authority for the proposition, for the reason that no such issue was presented by the facts in either of such cases. In Marler v. Handy, 88 Tex. 421, 31 S. W. 636, a new home was acquired. Marler left the old homestead after he deeded the same, subsequently "living in other places as a home, as comfortable as the old home, for eight years." 88 Tex. 425, 31 S. W. 638. In Portwood v. Newberry the wife willingly abandoned the home. 79 Tex. 340, 15 S. W. 270.

Whatever may be said in favor of the right of a husband to abandon his homestead without the consent of his wife, such abandonment must be in good faith on his part. This is conceded in the majority opinion herein. The fundamental error in that opinion, if all else therein be conceded as correct, is that the mere fact that, if the husband believed that such abandonment was for the good of the family, this is conclusive evidence of his good faith; and the fact that he did abandon the homestead is conclusive evidence that he so believed, without his saying so, and without any evidence tending to show the reasonableness of such belief. He who asserts that the homestead was abandoned, and rests his case upon the good faith of the husband, must prove such good faith. Berry Bishop is not shown to have ever said that he believed his abandonment of the homestead, if he did abandon the same, was for the best interest of his family, and the facts and circumstances in evidence do not indicate such belief. It will not do to rest such belief upon the surmise, as is done in the majority opinion herein, that, after supporting his wife and children on his farm for 14 years, he had concluded that it was too small for such purpose, and that it would be for the best interest of himself and family to buy a larger farm, when he did not buy another farm, or try to do so, and there is no evidence that he could have done so without selling his homestead. He did not sell or offer to sell the same, but gave it away, and thereby, as the evidence seems to indicate, pauperized himself and family. Nor will it do to rest the evidence of good faith upon the supposition that, after having been a reasonably successful farmer all of his life, after arriving at manhood he concluded that he could do better in some other business or vocation, when the evidence shows that the only business he followed after leaving the farm was that of a day laborer.

Belief on the part of Berry Bishop that it was for the best interest of his family to abandon his homestead is contradicted, not only by all of the circumstances attending

such abandonment, but by his sworn testimony in this case that he never intended to abandon the same. I think that when a husband attempts to abandon the homestead against the will of the wife, and without obtaining another homestead, in order to bar her homestead rights, it is not enough that he believes he is acting for the best interest of his family, but he must have some reasonable ground for such belief. The homestead law is for the protection of the wife and children against the improvidence of the husband, as well as against the greed of creditors. Otherwise, it would have been sufficient to protect the homestead from forced sale, without requiring the wife's signature to a conveyance thereof. Even in the matter of selecting another homestead, some regard must be had to the welfare of the wife. Haymond v. Haymond, 74 Tex. 420, 12 S. W. 90.

I think that this case should be reversed and remanded for the reasons:

1. The first deed to Mrs. Williams was void, and the subsequent abandonment of the homestead, if it was abandoned, did not make it effective to convey the wife's homestead right, which was a vested estate in all of the land.

2. If the land was community property, as I think it was, the gift of the same to his mother, under the circumstances of this case, was a fraud upon the community rights of the wife.

3. The evidence is not sufficient to sustain a finding, if it was so found, that Berry Bishop intended to abandon the homestead.

4. The evidence is not sufficient to sustain a finding, if it was so found, that Berry Bishop, in abandoning his homestead, if he did abandon it, acted in good faith as to the homestead rights of his wife.

In the two next preceding paragraphs of this opinion, referring to supposed findings of the trial court that Berry Bishop abandoned his homestead, and that he did so in good faith as to the homestead rights of his wife, I have indicated a doubt as to whether such findings were made.

The court made no specific findings of fact. The record seems to indicate that he gave judgment for the appellees upon a mistaken idea as to limitation. He might have done so under the issues raised by the pleadings. Limitation was not originally pleaded by appellees. The court propounded to Bishop a question, the answer to which might show that Mrs. Williams had held possession of the land for more than 10 years through Berry Bishop as her tenant. Appellants objected to the question, for the reason limitation had not been pleaded. The court permitted appellees to amend and plead limitation, over objection of appellants, and thereupon gave judgment for appellees, without assigning any reason therefor in the judgment, and without filing any findings of fact or conclusions of law.

I am not unmindful of the rule that, if a judgment of a trial court can be sustained upon any issue raised by the pleadings and the evidence, it is the duty of the appellate court to do so. This is a wholesome rule of procedure, but not necessarily binding upon the appellate court, under all circumstances. In the instant case, where there is good reason to suppose the court would have rendered the judgment which it did render, without finding that Bishop abandoned his homestead, and especially without finding that such abandonment was in good faith, when I do not believe that any intelligent court or fair-minded jury would have so found, had these specific issues been submitted, I am constrained to believe that the court did not base its judgment upon issues so wholly unsupported by the evidence.

There is nothing in the record to support a finding that Bishop intended to abandon his homestead, except his statement to that effect made to Mr. Woodward, when the matter of an oil lease was being discussed. Mrs. Williams desired to sell an oil lease on the land in controversy, and Bishop seems to have been aiding her in her efforts. Woodward would not approve Mrs. Williams' title, because Bishop was living on the land when he executed the deed to her. A lease from Bishop would not have been approved, on account of the record title being in his mother. In reply to an inquiry from Woodward, he stated that, when he left his homestead, he did so with the intention of never again living on the place. Thomas v. Williams, 50 Tex. 275. In opposition to this is the fact that it was not shown that he made such intention known to his wife (Brewery Ass'n v. Walker, 23 Tex. Civ. App. 6, 54 S. W. 360), or to any one else, except to Mr. Woodward under the circumstances mentioned, and no reason is shown why he would probably have desired to permanently abandon his home. As to his voting in the Coleman city precinct, he had the right to do so, if he had actually resided there with his family for more than six months before the election, though he intended to afterwards reside on his homestead.

I do not believe that Bishop told the truth when he made the statement to Woodward that he left his home with the intention of not again residing there, and I do not think that the trial court believed this statement. Especially I do not believe that the trial court found that Bishop abandoned his home in good faith as to the homestead rights of his wife. There is no evidence in the record that Bishop ever said he thought such abandonment was for the best interest of himself or family. There is no evidence of any facts or circumstances showing that he might reasonably have so believed. He did not after-

wards sell or attempt to sell the homestead, and thus acquire funds with which he might have bought another homestead, or have used the proceeds in support of his family, or have gone into business; but he gave it away. There is no evidence that he had any other property, or any income, except that derived from his daily labor.

In this connection, it must be remembered that not only was the burden of proof on the appellees to show abandonment of the homestead, which includes both the intent to abandon, at least upon the part of the husband, and also his good faith in the matter, but also such facts must be proven, not by a mere preponderance of the evidence, but by evidence which admits of no other reasonable conclusion. Shepherd v. Cassiday, 20 Tex. 25, 70 Am. Dec. 372; Gouhenant v. Cockrell, 20 Tex. 96; Thomas v. Williams, 50 Tex. 274; Ross v. McGowen, 58 Tex. 605; Cross v. Everts, 28 Tex. 534.

I do not think the evidence in this case measures up to this standard. In other words, I do not think the evidence of abandonment is of the conclusive character which the law requires to show abandonment of a homestead, admitting, as we should admit in support of the judgment herein, that every word of the testimony in favor of appellee is true. In Smith v. Uzzell, supra, the court said:

"If, however, the husband, in fraud of the right of the wife and without her consent, should seek by an abandonment to withdraw the homestead from the pale of its exemption given for the benefit of the family, he could have no power to do so."

But, if the majority decision herein is the law, he would have such power. If the wife should refuse to sign a deed to the homestead, the husband might leave the premises and go to a boarding house, declare that he had no intention of again living upon the place and thereafter execute a valid conveyance of the homestead. This would certainly be true, if his intention to abandon the homestead constituted abandonment, and his act in leaving with such intention was conclusive proof of good faith to his wife in the transaction. In Wynne v. Hudson, supra, the court said:

"If the act of the husband be intended to violate the right of the wife, and to deprive the family of a home, she is not without remedy for the protection of the family."

But, if the majority decision herein is the law, she is without remedy. It would avail her nothing to refuse to leave the place, for the only effect of this would be to show that she did not consent to the abandonment of the home. Under the doctrine announced in the majority decision, such consent is not necessary to constitute abandonment of the homestead. If the husband can do indirectly that which the law for-

bids him to do directly, the homestead right of the wife is a delusion, and the makers of our Constitution labored in vain when they placed therein a provision for the protection of such rights.

The writer of the majority opinion makes some criticisms of the appellants' assignments, which I do not think are sound; but as these are submitted as his individual views, and not as the views of the court acting through the majority, I do not deem it necessary to reply to them.

For the reasons stated, I am of the opinion that this case should be reversed and remanded, both for the reason that the facts should be more fully developed, and that there should be specific findings upon the issues raised by the pleadings.

On Appellants' Motion for Rehearing.

BRADY, J. On April 1, 1920, the Chief Justice and the writer, constituting a majority of the court, granted appellees' motion for a rehearing, set aside the former judgment and opinion of this court, and affirmed the case. Several days later Mr. Justice JENKINS filed a dissenting opinion, and appellants have filed a motion for rehearing. Upon a careful consideration of this motion, the Chief Justice and the writer have concluded to adhere to our last opinion, and to overrule the motion; and it is desired to briefly supplement the former opinion. The writer regrets that time will not permit a more extended consideration of the able dissenting opinion of our Associate, which its strength deserves.

In the opinion of the Chief Justice, the several assignments of error in appellants' brief are set forth substantially, and it is stated that, in his opinion, the questions of Berry Bishop's intention to abandon the homestead, and his good faith in so doing, are not presented to this court for decision. I desire now to expressly concur in that conclusion, as I do not believe that any of the assignments present either question.

[15] Upon the holding made in the majority opinion that the land was the separate property of Berry Bishop, because his title had its inception before his marriage, we adhere to that conclusion. Mr. Justice JENKINS undertakes to distinguish the authorities cited in the majority opinion, upon the ground that the contract between Berry Bishop and his mother was in parol and void under the statutes of fraud, and therefore could not be the inception of title. His reasoning is that Berry Bishop's rights thereunder were founded only on a moral obligation, and gave him no title, either legal or equitable, prior to his marriage. We are of the opinion that the position is not sound, because the fact that the contract was originally oral was, in any event,

rendered immaterial when Mrs. Bishop recognized compliance by her son with his contract, and made him a deed to the land. The statute of frauds provides that no action shall be commenced upon a contract for the sale of real estate, unless it is in writing and signed by the party to be charged therewith, or by his authority. It does not render a parol contract void. Under the facts of this case, the statute was intended for the benefit of the vendor, and Mrs. Williams could and did waive the benefits thereof. Therefore we think the statute of frauds does not affect the question, and that Berry Bishop's title had its inception while he was a single man, and that the land became his separate property. Upon the abandonment of the homestead, the deed which he made to his mother during his marriage became effectual to pass title to her.

We are further of the opinion that the second deed made by Berry Bishop to his mother invested her with title. Certainly this is true if the land was his separate property, and he had in good faith effected an abandonment of the homestead. If it was community property, assuming a prior valid abandonment, it was effectual to pass title to his mother, because of the considerations and obligations to his mother and his relationship to her, by virtue of which he had sought to vest title in her by the first deed.

In the dissenting opinion, it is sought to be shown that the majority were in error in holding that, although the land was the homestead of Bishop and wife when the first deed was executed, nevertheless, if thereafter it ceased to be homestead by abandonment, the first deed became operative and reinvested title in Mrs. Williams. The authorities cited by the Chief Justice are said to be distinguishable, and that Stallings v. Hullum, 89 Tex. 431, 35 S. W. 2, is authority for the proposition that a conveyance of the homestead by the husband only would not pass title as to the interest of either and that the wife could recover the land. We call attention to the fact that in that case Chief Justice Gaines, after discussing some of the cases cited in the majority opinion, concluded the opinion with this statement:

"The fact that it was held in those cases that the deed was not so far void as to prevent it from operating by way of estoppel against the husband when the wife's interest may cease does not justify the conclusion that it was to have any operation whatever so long as her right of homestead in the property should continue to exist."

In that case the wife's rights in the homestead had never ceased. No abandonment had been effected, and the wife sued to recover the homestead which her husband had sought to convey in fraud of herself; she being deceived when she signed and acknowl-

edged the deed. The case was one of alienation of the homestead, and not abandonment, and the quotation above strongly indicates the view of the Supreme Court that a deed to a homestead made by the husband alone might become operative as to both husband and wife, when the wife's interest in the homestead should cease to exist. In case a lawful abandonment is made by the husband, the wife's homestead rights then cease to exist, and there is nothing to prevent the original deed becoming operative, under the principles announced in the cases cited in the majority opinion. Especially would this be the case where the property is the separate estate of the husband.

Justice JENKINS concedes that the wife could not recover her estate or interest in a former homestead, where she did not join in the deed, in case another homestead had been acquired. This upon the theory that she cannot have two homesteads at the same time, and that her title to the former homestead ceases when she acquires a new one. We cannot see why the same result would not ensue when the husband, in good faith, has abandoned the former homestead. The wife's title to the former homestead then ceases without the acquisition of a new homestead, as held by the Supreme Court in a long line of decisions.

We are willing to concede that the husband's deed to the homestead can never alone become operative to convey the title, so long as the wife's interest in the homestead continues; but when it ceases to exist, either by the acquiring of a new homestead or by a good-faith abandonment, we are convinced that the deed becomes effectual.

[16] In the dissenting opinion it is further stated that the record seems to indicate that the trial court based the judgment upon the mistaken idea of limitation. We find in the record no warrant for that conclusion, and no reason for not applying the rule that, where the judgment of the trial court may be sustained upon any issue raised by the pleadings and the evidence, it should be upheld by the appellate court.

Finally, we do not share the apprehensions of our Associate that we have, by indirection, destroyed the constitutional protection of the homestead. In Hudgins v. Thompson, Mr. Justice Greenwood, speaking for the Supreme Court, clearly drew the distinction between the constitutional restraints upon alienation of the homestead and the right of the husband to effect an abandonment which would conclude the wife, without the acquisition of another homestead. We think the question has been set at rest by this late pronouncement of our Supreme Court, and, if we have erred, it has been in deference to the decisions of the court of last resort.

One further word for myself, in this im-

portant case. I gave my concurrence to the original decision and opinion upon the belief that it was the law of this state that the husband could not, in good faith, abandon the homestead without at least giving the wife some notice of his intention in leaving the homestead, or of the effect of his or her acts, in leaving it, upon her homestead rights. A careful study of the decisions has convinced me that this view is erroneous, and that it is now the settled law of the state that the husband, by reason of his paramount authority as the head of the family, has the power to abandon the homestead without consulting or even notifying the wife of his intention, provided he acts in good faith in so doing. Good faith, to my mind, now means nothing more than that he must act honestly towards the wife, and for what he deems to be the best interest of his family, even though he may be mistaken in judgment, and although it may result in not acquiring at any future date another homestead.

Appellants' motion for rehearing is overruled, to which Mr. Justice JENKINS dissents.

Motion overruled.